## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| 1-800 CONTACTS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| JAND, INC. d/b/a WARBY PARKER | ) | |
| | ) | **Jury Trial Demanded** |
| Defendant. | ) | |

## COMPLAINT

Plaintiff 1-800 Contacts, Inc. ("1-800 Contacts") makes the following allegations in support of its Complaint against Defendant JAND, Inc., d/b/a Warby Parker ("Warby Parker"):

## NATURE OF THE ACTION

1.      This is an action to stop and remedy Defendant Warby Parker's continuing trademark infringement, unfair competition, and deceptive advertising practices.  Plaintiff 1-800 Contacts is a well-known pioneer in the online contact lens marketplace.  Over the past three decades, 1-800 Contacts has expended hundreds of millions of dollars on advertising, marketing, and promotion to cultivate strong consumer recognition of its brand, services, and trademarks.

2.      1-800 Contacts' investments and decades-long commitment to its customers has paid off, as the company now serves *millions* of customers.  Indeed, between June 1, 2020, and June 30, 2021, alone, the 1800contacts.com website averaged more than 1.5 million unique visitors monthly.

3.      1-800 Contacts is an online—rather than a brick-and-mortar—retailer, so millions of customers and prospective customers reach 1-800 Contacts by navigating to the 1800contacts.com website.  In an effort to navigate to its online store at the 1800contacts.com website, many consumers type "1800 Contacts," "1 800 Contacts," "1800contacts.com," "1800contacts," or other of 1-800 Contacts' trademarks as search terms in search engines such as Google.

4.      This type of targeted, *navigational* search differs from a search where consumers search for a *product* name (which may be for informational purposes) or use a general *transactional* search query (such as "buy contact lenses online"), in which case the searchers may not intend to navigate to a specific retailer's website.  Consequently, when consumers search for one of 1-800 Contacts' trademarks, they reasonably intend to reach the 1800contacts.com online store or to obtain information regarding 1-800 Contacts and these consumers reasonably expect the initial links displayed by the search engine to take them to 1-800 Contacts' website.  Any other outcome would be contrary to their intent and expectations.

5.      Warby Parker, primarily a retailer of eyeglasses, is a new entrant in the online contact lens marketplace and has relatively low consumer recognition for contacts.  Instead of independently developing its own brand awareness related to the online sales of contacts, Warby Parker has devised a plan to confuse and mislead consumers who seek to go to 1-800 Contacts' online store.  Warby Parker's plan is designed in purpose and effect to trade off 1-800 Contacts' brand name and reputation through unauthorized bidding on 1-800 Contacts' trademarks as search engine

keywords that generate Warby Parker advertisements.  Such conduct exposes

consumers to source-ambiguous Warby Parker advertisements and a deep linked

webpage that confuses consumers.

6.     By its deliberate use of the 1-800 Contacts registered trademarks to place

ambiguous ads that generate source, sponsorship, or initial interest confusion and to

unfairly compete with 1-800 Contacts, Warby Parker has usurped and continues to

usurp the valuable goodwill that 1-800 Contacts has built in its marks through the high

quality of its offerings, its exceptional customer service, and its substantial investments

in advertising, marketing, and promotions.

7.     Warby Parker's plan unfairly relies on the strength of 1-800 Contacts'

trademarks by placing ads designed to confuse consumers searching for 1-800 Contacts

by, among other things, directing these consumers to a deep linked Warby Parker

landing webpage that deceptively and intentionally mimics the look and feel of 1-800

Contacts' website, including through use of a confusingly similar color scheme, layout,

and discount offering, along with imagery evoking the 1800contacts.com website.

8.     In particular, Warby Parker bids on 1-800 Contacts' distinctive trademarks

to make search engine keyword purchases with Google and other search engines.  By

doing so, Warby Parker arranges to place its own ads at or near the top of the Google

search results page that appears after a consumer searches for 1-800 Contacts or one of

its trademarks.  Warby Parker then knowingly and intentionally presents those

consumers with ads that appear to be from 1-800 Contacts or an approved affiliate,

licensee, or associate of 1-800 Contacts.  Warby Parker's resulting keyword ads do not

provide any language inviting consumers to compare Warby Parker's goods or services with 1-800 Contacts or otherwise identifying Warby Parker as a competitor of the company for which the consumer searched.

9.     Moreover, Warby Parker deceptively deep links those ads to a landing webpage at the Warby Parker website that is not conspicuously identifiable as that of a competitor but rather mimics key elements of the 1-800 Contacts website.  Such mimicry causes consumers who view that webpage to reasonably—but mistakenly—conclude that the webpage they have reached is 1-800 Contacts or a service that is affiliated with, associated with, sponsored by, approved by, or endorsed by 1-800 Contacts.

10.     When consumers familiar with the 1-800 Contacts website— 1800contacts.com—arrive at the Warby Parker webpage linked to Warby Parker's deceptive ad, they see a familiar light blue colored background displaying representative contact lens products and a discount offer, just like that found at 1800contacts.com, such that they are falsely assured that they have reached the 1-800 Contacts website or one that is affiliated with 1-800 Contacts.

11.     For those unfamiliar with the 1800contacts.com website, Warby Parker deceptively provides no clear indication to consumers searching for 1-800 Contacts that the linked Warby Parker webpage is *not* a site owned by, or affiliated with, 1-800 Contacts.  Instead, Warby Parker capitalizes on the deceptive ambiguity it has intentionally created to pass itself off as being affiliated or associated with 1-800 Contacts to consumers who unwittingly fall prey to this deception.

12.     The upshot of Warby Parker's conducts is as follows:  Warby Parker's unauthorized use of 1-800 Contacts' well-known brand name and trademarks diverts a material number of customers who expected to be taken to 1-800 Contacts' website to a deep linked page at Warby Parker's website.  Once there, some customers are confused by the deep-linked webpage that they reasonably believe to be affiliated with 1-800 Contacts, while others after arriving realize that they have been steered away from 1-800 Contacts.  In either scenario, Warby Parker makes contact lenses sales that they would not have otherwise made and illegally increases 1-800 Contacts' advertising costs.  Warby Parker's ability to take advantage of 1-800 Contacts' decades of investment makes Warby Parker's bidding on 1-800 Contacts' brand name inherently unfair.  This lawsuit seeks to remedy Warby Parker's past and ongoing trademark infringement and unfair competition.

## PARTIES

13.     1-800 Contacts is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 261 West Data Drive, in Draper, Utah.

14.     Upon information and belief, Warby Parker is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business at 233 Spring Street, 6th Floor East, in New York, New York.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. §

1332 (diversity of citizenship), 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks), 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws), and/or 28 U.S.C. § 1367 (supplemental jurisdiction).

16.     1-800 Contacts' claims arise under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*; New York common law; and New York General Business Law § 349.

17.     1-800 Contacts uses the trade name "1-800 Contacts" and trademarks including 1800CONTACTS, 1 800 CONTACTS, and 1800CONTACTS.COM in interstate commerce in connection with the online sale of contact lenses and related goods, including a full range of contact lens brands and online vision exams.

18.     Beginning on or about November 2019, Warby Parker began selling contact lenses nationwide, including in this district, through its warbyparker.com website and at its stores.  Warby Parker is now a competitor of 1-800 Contacts in the online retail sale of contact lenses.

19.     This Court has personal jurisdiction over Warby Parker because Warby Parker's principal place of business is in New York and within this judicial district, Warby Parker transacts substantial business in New York and within this judicial district, and Warby Parker committed and continues to commit acts of infringement in violation of 15 U.S.C § 1114 and 1125 in New York and within this judicial district.

20.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND

### *1-800 Contacts and the 1 800 CONTACTS Marks*

21.     Since 1996, 1-800 Contacts has sold contact lenses through its

1800contacts.com website under its distinctive "1 800 CONTACTS" trademark and

variations thereof (collectively, the "1 800 CONTACTS Marks").

22.     The 1 800 CONTACTS Marks include several federally registered

trademarks containing the term "1 800 Contacts" and variations thereof, including:

| Mark | Reg. No. | Goods/Services | Registered |
|------|----------|----------------|------------|
| 1800CONTACTS | 2675866 | (Int'l Class: 35) mail order and telephone order services in the field of contact lenses and related products, and electronic retailing services via computer featuring contact lenses and related products | January 21, 2003 |
| 1 800 CONTACTS (Stylized)<br><br>1800 contacts | 5131335 | (Int'l Class: 09) Contact lenses (Int'l Class: 35) On-line retail store services featuring contact lenses | January 31, 2017 |
| 1800CONTACTS.COM | 3833549 | (Int'l Class: 35) Mail order and telephone order services in the field of contact lenses and related products, and on-line retail store services featuring contact lenses and related products | August 17, 2010 |

Attached and incorporated by reference into this Complaint as **Exhibit 9** are true and

correct copies of U.S. Patent and Trademark Office records showing the active status of

each U.S. federal trademark registration identified above.

23.    The registrations for the 1 800 CONTACTS Marks are in full force and effect on the United States Patent and Trademark Office's Principal Register.

24.    The registration for the 1 800 CONTACTS mark (Registration No. 2675866) is incontestable under 15 U.S.C. § 1065 and constitutes conclusive evidence of the validity of the registered mark and of the registration of the mark, of 1-800 Contacts' ownership of the mark, and of 1-800 Contacts' exclusive right to use the registered mark in commerce in connection with the services specified in the registration, pursuant to 15 U.S.C. § 1115(b).

25.    1-800 Contacts has used the 1 800 CONTACTS Marks (including on the 1800contacts.com website) extensively and has realized substantial sales of goods and services under the marks.

26.    The 1 800 CONTACTS Marks are recognized as identifying goods and services provided by 1-800 Contacts.  The 1 800 CONTACTS Marks are distinctive in the marketplace and closely associated by consumers with 1-800 Contacts and as a source-identifier for 1-800 Contacts' offerings.

27.    1-800 Contacts has expended hundreds of millions of dollars—through longstanding and extensive advertising, marketing, and promotion, coupled with an intense focus on customer service and advocating for consumer protection—to cultivate consumer recognition for the 1 800 CONTACTS Marks, and 1-800 Contacts enjoys valuable goodwill associated with the 1 800 CONTACTS Marks.

28.    1-800 Contacts' consumer protection efforts have included successfully leading advocacy for federal legislation allowing consumers access to their contact lens

prescriptions, fighting contact lens manufacturers over anti-consumer pricing models, and more recently, promoting telehealth laws to provide greater access to health care.

29.     1-800 Contacts and the 1 800 CONTACTS Marks also have been featured in prominent media outlets across the United States, including the *New York Times*, *Wall Street Journal*, *New York Post*, *Chicago Tribune*, *Salt Lake Tribune*, *Denver Post*, *Los Angeles Times*, *Houston Chronicle*, *Washington Post*, *Atlanta Journal-Constitution*, and CNN.

30.     Customer service is a company hallmark of 1-800 Contacts and has been crucial to 1-800 Contacts' success.  Indeed, over the last quarter century, 1-800 Contacts has earned many accolades for superior customer service.  To take just one example, in 2021, *Newsweek* bestowed upon 1-800 Contacts the coveted "Best Customer Service" award and the number one ranking in the "Contact Lenses (Online)" category. "America's Best Customer Service Companies," *Newsweek*, *available at* https://www.newsweek.com/americas-best-customer-service-2021 (visited July 26, 2021).

31.     1-800 Contacts has been rated the "Best overall" place to buy contact lenses online, and the "1800CONTACTS trademark" has become a "household name." *Available at* https://greatist.com/discover/best-places-to-buy-contacts-online#Pricing-guide (visited July 26, 2021)).

### *Search Engine Advertising*

32.     One way companies pay to advertise products on the internet is through "search advertising."  "Search advertising" consists of advertisers bidding on keywords that generate paid search results in auctions hosted by the search engines.

33.     When online shoppers uses a search engine such as Google or Microsoft Bing (formerly known simply as "Bing") to search for 1-800 Contacts, that engine's program returns two main types of search results to the shoppers:  (1) sponsored, or paid, search results, and (2) organic, or natural, search results.  Both sponsored and organic search results provide links to webpages.

34.     "Paid search" results are advertisements.

35.     "Natural search" results comprise "[t]he non-paid results of a search query" and consist of "links found by the search engine based on the content of web sites" as determined by Google's proprietary algorithm.  "Search Ads 260 Overview," *available at* https://support.google.com/searchads/answer/7383332?hl=en (visited July 26, 2021).

36.     Although the exact methodology Google uses for natural searches is proprietary, it is generally designed to determine what searchers are looking for based on the number of websites visited and ads clicked by previous users who performed the same search.  In other words, organic or natural results appear based exclusively on which results a search engine's algorithm deems to be most relevant to the shopper's search.  Thus, the results of natural searches for trademarked terms are an informal survey of the association that consumers draw between the given mark and the company using that mark.

37.     In contrast, sponsored or paid results appear because the owner of the featured webpage has paid for its advertisement and link to appear in response to that search.

38.     Notably, when a consumer conducts a search, ***the paid, or bid for, advertisements appear first in the search results***.  These advertisements are accompanied by a small designation signaling they are an "Ad."  The "Ad" designation does not indicate whether the party displaying the ad is the owner of the trademarked product or service that was the subject of the shopper's search.

39.     Approximately 92% of all Internet search engine searches are conducted on Google, which is the most visited website in the world.  "Google Revenue Surges as Online Advertising Market Thrives, *The Wall Street Journal* (July 27, 2021), *available at* https://www.wsj.com/articles/google-alphabet-googl-2q-earnings-report-2021-11627344309 (visited Aug. 3, 2021) (noting that "Google is the world's largest digital ad company by revenue," and Google's "search engine has a 92% share of world-wide internet searches"); "Search Engine Market Share Worldwide" data from *Statcounter* for June 2020 through June 2021, *available at* https://gs.statcounter.com/search-engine-market-share (visited July 27, 2021) (showing Google market share of 92.47% for June 2021).

40.     Google search results include "natural search" and "paid search" results.

41.     Google Ads (formerly Google AdWords) is an online advertising platform developed by Google through which advertisers bid to place advertisements on the search engine results page.  These advertisements contain a Uniform Resource Locator—*i.e.*, a web address—that links to the advertiser's chosen website landing webpage.

42.     Using Google Ads, an advertiser can strategically place advertisements in the results of searches.  The Google Ads services are offered under a pay-per-click pricing model in which an advertiser pays Google based on how many consumers click on its advertisements that appear in the paid search results.

43.     Search engines generally do not limit the keywords available to advertisers at auction.

44.     As a result, in lieu of or in addition to bidding on descriptive or generic terms, some companies bid on a competitor's brand names or trademarks so that the company's advertisement runs when a consumer searches for that particular competitor.

45.     For example, Google Ads currently does not prevent companies from bidding on trademarks as "keywords," even if the bidding company does not own the trademark and the trademark is instead owned and registered by the bidding company's competitor.

46.     If a competitor of a trademark owner successfully bids at Google Ads on a keyword that consists of a trademark owner's name or trademark, the competitor's ad will appear first or high in the Google search results for the trademark owner's name or trademark, along with a small "Ad" notation.

47.     The competitor's ad that appears as a result of such a keyword winning purchase may unlawfully mislead, confuse, or deceive consumers who conducted a navigational search intending and expecting to instead locate the owner of the trademark for which they searched.  This occurs, for example, when consumers are

confused into thinking that the competitor is the trademark owner, or that the competitor, ad, or linked webpage is sponsored by, licensed by, endorsed by, approved by, or otherwise affiliated or associated with the trademark owner.

48.     The risk of initial interest, consumer source, sponsorship, or affiliation confusion, as well as deception or mistake is heightened in the context of keyword advertising using a competitor's trademark because consumers searching for the trademark of a particular retailer generally intend to reach the website of that retailer and many consumers assume that the top search results are associated with the company or brand for which they searched.

### Warby Parker's Unlawful Scheme

49.     Since its founding in 2010, Warby Parker has held a reputation as an eyeglasses company and consumers generally associate the company with eyeglasses. Indeed, the "Our History" narrative on Warby Parker's website discusses eyeglasses but makes no mention of contact lenses.  Attached as **Exhibit 1** is a true and correct copy of a webpage titled "History" at Warby Parker's website, *available at* https://www.warbyparker.com/history (visited Aug. 16, 2021) (discussing eyeglasses but not contact lenses).

50.     In 2013, Warby Parker opened its first brick-and-mortar stores and showrooms for its eyeglasses and sunglasses.  Initially, these stores did not sell contact lenses.

51.     Warby Parker uses the trade name and trademark "Warby Parker" in connection with online and retail sales of eyeglasses, sunglasses, and more recently, contact lenses.

52.     Beginning in or about November 2019, Warby Parker began selling contact lenses.

53.     As a newer and much smaller entrant into the online contact lens business, Warby Parker, in contrast to 1-800 Contacts, is not well known to consumers as a provider of contact lenses.

54.     Thus, consumers do not readily associate Warby Parker with contact lenses or identify Warby Parker as a competitor of 1-800 Contacts.

55.     At or around the time that Warby Parker began selling contact lenses, it devised a plan to trade on the great strength and goodwill of the 1 800 CONTACTS Marks by using keyword advertising, ambiguous ads, and a deep-linked webpage to confuse consumers by diverting those looking for the 1800contacts.com website to the warbyparker.com website.

56.     In or around November 2019, Warby Parker began purchasing the 1 800 CONTACTS Marks as keywords on Google and other internet search engines, which caused consumers searching for 1-800 Contacts to see ads that could reasonably be viewed as being from 1-800 Contacts (or an affiliate or licensee of 1-800 Contacts) but were actually for 1-800 Contacts' competitor, Warby Parker.

57.     Warby Parker continues this practice today.

- 14 -

58.    For example, a recent search for "1 800 contacts" on Google generated the following result:



Attached as **Exhibit 2** is a true and correct copy of a screenshot of a July 26, 2021 Google search for "1 800 contacts."

59.    In the above screenshot (**Exhibit 2**), a Warby Parker advertisement appears as the first search result.

60.     The Warby Parker advertisement fails to identify Warby Parker in the headline or in the content of the advertisement.  Nor does the advertisement clearly indicate that the website is ***not*** owned by, or affiliated with, 1-800 Contacts.

61.     The warbyparker.com domain name text also appears in a smaller font and less prominent color – black – than the bright blue advertisement headline.  Many consumers who scan the search results, particularly on a mobile device that displays fewer search results on the initial search engine results page,  will focus on the larger, brighter-colored, and more conspicuous ad text and not notice the smaller, black domain name text.

62.     The only potential signal to consumers that the Warby Parker advertisement was not an ad of 1-800 Contacts, or an affiliate or licensee of 1-800 Contacts, is the warbyparker.com domain name, which is not meaningful to most online contact lens purchasers because Warby Parker is a new and relatively unknown online retailer of contact lenses.

63.     Warby Parker's plan creates a particularly significant likelihood of confusion for consumers who engage in navigational searches.  The primary purpose of navigational searches is to locate a specific website.  When consumers engage in navigational searches using a keyword corresponding to a specific business, their reasonable expectation is to use the search engine as a shortcut to "navigate" directly to that company's website.

64.     In contrast to consumers who search for a *product*'s brand name, search queries that involve a *retailer*'s brand name or trademark are likely made with a

navigational intent.  That is, consumers searching for an online retailer's brand name or trademark generally intend to navigate directly to that retailer's website.

65.     Navigational searchers for the 1 800 CONTACTS Marks or 1-800 Contacts' "1800contacts.com" domain name typically intend and expect to navigate to 1-800 Contacts' 1800contacts.com website.

66.     Warby Parker magnifies this confusion by using a landing webpage for the warbyparker.com deep link shown in the "1 800 contacts" Google search results in **Exhibit 2** above (the "Deep Linked Ad Page").   The Deep Linked Ad Page in the paid search advertisements that are triggered in response to searches for a 1 800 CONTACTS Mark is similar to 1-800 Contacts' standard website homepage.  Warby Parker intentionally used the Deep Linked Ad Page to mimic the recognizable and distinctive look and feel that 1-800 Contacts has used at 1800contacts.com for the purpose of brand identification and which has become associated with 1-800 Contacts in the minds of online contact lens purchasers.

67.     The Warby Parker keyword advertisement shown in Paragraph 58 above—which is positioned as the top result in a "1 800 contacts" search—presents a deep link leading to a unique warbyparker.com landing webpage that is different from the look and feel of Warby Parker's homepage and that features coloring and a presentation that is confusingly similar to 1-800 Contacts' website.

68.     1-800 Contacts' website incorporates a recognizable and distinctive look and feel that is used for the purpose of brand identification and is associated with 1-800 Contacts in the minds of consumers.  Since 1996, 1800contacts.com has continuously

and prominently featured the color blue, and more than a decade ago, 1800contacts.com first prominently featured a shade of light blue on its homepage.  Since April 2020, the latest iteration of this distinctive look and feel of 1-800 Contacts' website has included a light blue rectangular shaded box that spans most of the screen in a horizontal configuration and displays representative contact lens product packages to the right of a discount offer to "Get 20% off your first order."  The 1800contacts.com standard website homepage contains this distinctive look and feel as shown below:



Attached as **Exhibit 3** is a true and correct copy of 1-800 Contacts' standard website homepage, 1800contacts.com (visited July 28, 2021).

69.    Warby Parker's landing webpage for its ads generated by search engine keyword searches for the 1 800 CONTACTS Marks usurps and mimics the look and feel of the 1800contacts.com website, further confusing consumers into believing they have arrived at a 1-800 Contacts site or an affiliated site.

70.     In particular, the following is the landing webpage for the

warbyparker.com deep link shown in the "1 800 contacts" Google search results in

**Exhibit 2** above.  The Deep Linked Ad Page, like the 1800contacts.com homepage,

displays a rectangular box in nearly the same shade of light blue and features contact

lens product packaging images to the right of a discount offer to "Get 15% off your first

contacts order":



Attached as **Exhibit 4** is a true and correct copy of the Deep Linked Ad Page resulting

from a July 20, 2021 Google search for "1 800 Contacts," *available at*

https://www.warbyparker.com/contacts?bidkw=1800%20contacts&dvc=c&network=g

&mobile=&searchntwk=1&content=&creative=484354426296&adposition=&placement

=&target=&keyword=1800%20contacts&matchtype=e&mkwid=s&pmt=e&pdv=c&pro

duct_category=&utm_source=google&utm_medium=cpc&utm_term=1800%20contacts

&utm_campaign=Newengen_-_General_NB_-

_Contacts_Competitors_l_DE1_3022&cvo_campaign=Newengen_-_General_NB_-

_Contacts_Competitors_l_DE1_3022&cvo_adgroup=87784974691&utm_term=87784974

691-kwd-

28294831&utm_content=484354426296&singular=124__g__7948108702__87784974691__

484354426296&gclid=EAIaIQobChMIksfonrzy8QIVBTI4Ch0onAtcEAAYAiAAEgJlFPD

_BwE (visited July 20, 2021).

71.     In late December 2020, Warby Parker revamped the Deep Linked Ad Page

color scheme and layout to even more closely resemble the updated <u>1800contacts.com</u>

website homepage layout adopted in April 2020.  Warby Parker did so by transitioning

the blue rectangular box at the Deep Linked Ad Page from one shade of blue to a lighter

shade of blue that is nearly the same shade as the light blue rectangular box displayed

on 1-800 Contacts' standard website homepage.  Moreover, to further imitate the latest

version of <u>1800contacts.com</u>, Warby Parker began displaying—in the light blue

rectangular box—contact lens product packaging images and a discount offer to "Get

15% off your first contacts order."

72.     Warby Parker's plan intentionally deceives and confuses consumers, who

have a reasonable and legitimate expectation that their searches for the well-known

1 800 CONTACTS Marks will lead them to 1-800 Contacts' website, products, and

services, not to a page created by a competitor seeking to pass itself off as 1-800

Contacts or an affiliate or licensee of 1-800 Contacts.  Due to Warby Parker's plan,

consumers are unable to determine immediately and conclusively whether or not

Warby Parker's landing webpage resulting from paid searches for the 1 800 CONTACTS Marks is affiliated with, associated with, sponsored by, endorsed by, or otherwise connected to 1-800 Contacts.

73.     Notably, the paid search ads Warby Parker pays search engines to display link to websites of distinctly different appearance depending on whether a user searches for the 1 800 CONTACTS Marks or "Warby Parker contacts."  Consumers searching for "Warby Parker contacts" are led to a paid search ad for the webpage entitled "Contacts" at the Warby Parker website, which replicates the look and feel of the WarbyParker.com homepage and other pages at WarbyParker.com.  However, for the paid search ads Warby Parker shows to 1-800 Contacts' customers and prospective customers searching for the 1 800 CONTACTS Marks, Warby Parker deceptively presents a landing page that is distinctively different from the one it provides to consumers who intentionally search for "Warby Parker contacts."

74.     The web page Warby Parker presents to 1-800 Contacts' customers and potential customers searching for a 1 800 CONTACTS Mark—the Deep Linked Ad Page—is much more similar to 1-800 Contacts' 1800contacts.com website than the rest of Warby Parker's warbyparker.com website and incorporates a look, feel, and color scheme confusingly similar to 1800contacts.com.

75.     In contrast to the Deep Linked Ad Page Warby Parker presents to consumers seeking 1-800 Contacts' website, below is the landing webpage for a Warby Parker ad generated from a Google search for "Warby Parker contacts" (the "Warby Parker Contacts Ad Landing Webpage"):



Attached as **Exhibit 5** is a true and correct screenshot of the Warby Parker Contacts Ad

Landing Page, *available at*

https://www.warbyparker.com/contacts/offerings?bidkw=warby%20parker%20conta

cts&dvc=c&network=g&mobile=&searchntwk=1&content=&creative=430636082043&a

dposition=&placement=&target=&keyword=warby%20parker%20contacts&matchtype

=e&mkwid=s&pmt=e&pdv=c&product_category=&utm_source=google&utm_medium

=cpc&utm_term=warby%20parker%20contacts&utm_campaign=Newengen_-_Brand_-

_Contacts_-_Scout_l_DE1_811b&cvo_campaign=Newengen_-_Brand_-_Contacts_-

_Scout_l_DE1_811b&cvo_adgroup=82613507219&utm_term=82613507219-kwd-

382387980649&utm_content=430636082043&singular=124__g__7948041598__826135072

19__430636082043&gclid=EAIaIQobChMIo_K5ysK28gIVLv3jBx0YAAHQEAAYASAAE

gLJ2_D_BwE (visited Aug. 16, 2021).  Attached as **Exhibit 6** is the August 16, 2021

Google search results page for "Warby Parker contacts," for which the first search result led to the Warby Parker Contacts Ad Landing Page that is attached as **Exhibit 5**.

76.    The Deep Linked Ad Page differs from both the Warby Parker homepage at warbyparker.com (shown below) (the "WP Website Homepage") and the Warby Parker Contacts Ad Landing Page in an effort to mimic the look and feel of 1-800Contacts.com.



Attached as **Exhibit 7** (first page) is a true and correct screenshot of the WP Website Homepage, *available at* https://www.warbyparker.com/ (visited Aug. 16, 2021).

77.    In particular, the Deep Linked Ad Page contains a light blue shaded box near the top of the webpage that prominently spans most of the screen horizontally, displays contact lens product packaging images, and contains a discount offer in the same orientation as 1-800 Contacts' webpage.  The WP Website Homepage and the Warby Parker Contacts Ad Landing Page look dramatically different.  Neither features

this light blue shaded box but rather contain a brown or gray shaded box and a white background, respectively, that prominently span most of the screen horizontally. Indeed, none of the other category pages on the Warby Parker website (*i.e.*, Home Try-On, Eyeglasses, Sunglasses, and Get a Prescription) feature this light blue color or otherwise incorporate the same look and feel of 1800contacts.com. **Exhibit 7** (third through seventh pages containing screenshots from category webpages at the warbyparker.com website titled "Home Try-On," "Eyeglasses," "Sunglasses," and "Get a Prescription").

78.     Additionally, like the 1800contacts.com homepage—and unlike the WP Website Homepage and the Warby Parker Contacts Ad Landing Page—the Deep Linked Ad Page also contains a discount offer for consumers to get a certain percentage off a first contacts lens order.

79.     The color of the light blue shaded box on the Deep Linked Ad Page is substantially similar to the light blue color that comprises the shading of much of the 1800contacts.com homepage.  Such light blue color shading features in a similarly prominent position on the top of the 1800contacts.com homepage as it does on the Deep Linked Ad Page.  *Compare* **Exhibit 3** *with* **Exhibit 4**.

80.     Warby Parker's plan further exploits consumer expectations and creates consumer confusion by bidding on 1-800 Contacts' "1800contacts.com" domain name as a keyword on Google Ads and other search engines.  By doing so, Warby Parker's conduct has the purpose and effect of deceiving and misdirecting consumers who type 1-800 Contacts' domain name into the *search* bar rather than the *address* bar of their

internet browser and to divert them away from 1-800 Contacts and to Warby Parker's

Deep Linked Ad Page.

81.     Below and attached as **Exhibit 8** is a true and correct copy of a screenshot

of search results generated for an August 18, 2021 Google search for

"1800contacts.com," showing a source-ambiguous Warby Parker ad that leads to the

Deep Linked Ad Page as the first result:



82.     In the above screenshot (**Exhibit 8**), a Warby Parker advertisement appears as the first search result.

83.     By using paid keyword search advertisements for the 1 800 CONTACTS Marks to place source-ambiguous ads and by diverting consumers to a landing webpage with a confusingly similar look and feel to the 1800contacts.com website, Warby Parker is, upon information and belief, intentionally trying to deceive consumers into believing they are viewing 1-800 Contacts' official website or a website that is affiliated or associated with, sponsored by, endorsed by, or approved by 1-800 Contacts or expecting that even if some consumers are able to determine the lack of affiliation they will remain and purchase contact lenses from Warby Parker instead of 1-800 Contacts.

84.     1-800 Contacts has been forced to spend substantial sums, by outbidding Warby Parker virtually every day, to combat the likelihood of consumer confusion and deception caused by Warby Parker's scheme in an effort to ensure that those who seek 1-800 Contacts and its website, products, and services get where they are trying to go, get what they are looking for, and are not misled.

85.     Warby Parker has recently escalated its Google Ads keyword bids on the 1 800 CONTACTS Marks, thereby substantially increasing the likelihood that its ambiguous ads and landing webpage will confuse, mislead, and deceive consumers who erroneously believe that Warby Parker—a relatively unknown brand in the online contact lens marketplace that consumers may never have heard of—is an affiliate or licensee of 1-800 Contacts, the company for which they searched.

86.     Despite its efforts to mitigate the consumer confusion Warby Parker has caused, 1-800 Contacts has not always succeeded in securing the critical top search result position for searches performed for its 1 800 CONTACTS Marks.  Often, Warby Parker's ads appear before paid and natural search results that lead consumers to 1-800 Contacts and its products and services.

87.     Moreover, even when 1-800 Contacts manages to outbid Warby Parker, the Warby Parker advertisements (connecting to its Deep Linked Ad Page) are still featured prominently, often in the second search position, attracting substantial clicks of confused or misled consumers, in violation of 1-800 Contacts' rights.

88.     Warby Parker's persistent and prevalent use of the 1 800 CONTACTS Marks in keyword advertising to place ads and website links that are likely to confuse and mislead consumers about the source or affiliation of the advertiser has been willful and intentional and undertaken in bad faith, including, but not limited to, for the purposes of (i) confusing and deceiving 1-800 Contacts' customers and prospective customers, (ii) thwarting consumers' legitimate rights and expectations to find what they are looking for when searching for 1-800 Contacts' products and services, and (iii) forcing 1-800 Contacts to spend substantial resources bidding on search advertising keywords for its *own trademarks* in an effort to combat the confusion created by Warby Parker's overall scheme.

89.     Warby Parker's use of the 1 800 CONTACTS Marks in keyword search advertising to place ads and deep linked webpage links that are likely to confuse and mislead consumers about the source or affiliation of the advertiser is intended to exploit

the favorable reputation consumers associate with the 1 800 CONTACTS Marks and to confuse consumers.  Indeed, there are many other methods and means for an online retailer of contact lenses, such as Warby Parker, to advertise without using the 1 800 CONTACTS Marks and without deceiving consumers regarding the source of the advertised products.

90.     The totality of Warby Parker's conduct causes 1-800 Contacts substantial harm, including by (i) unfairly and deceptively confusing and diverting current and prospective 1-800 Contacts customers to Warby Parker's website, (ii) unlawfully usurping the considerable goodwill earned by 1-800 Contacts as a result of the high quality of its services and its promotion of and investment in the 1 800 CONTACTS Marks as a source-identifier for such services, (iii) causing 1-800 Contacts to lose profits from consumers who search for 1-800 Contacts but are unfairly misdirected by Warby Parker, and (iv) imposing a significant financial burden on 1-800 Contacts by forcing it to purchase its own trademarks as keyword bids at online search engines at inflated prices to ensure that consumers searching for its products and services can find them and are not confused, misled, deceived, or unwittingly diverted to Warby Parker's website as a result of the design, purpose and effect of its conduct.

### COUNT I
**Lanham Act – Federal Trademark Mark Infringement, in Violation of 15 U.S.C. § 1114**

91.     1-800 Contacts re-alleges and incorporates the allegations of Paragraphs 1 through 90, inclusive, of this Complaint by reference into this Count as if fully set forth herein.

92.     As a result of its widespread, continuous, and exclusive use of the 1 800 CONTACTS Marks to identify its goods and services and 1-800 Contacts as their source, 1-800 Contacts owns valid and subsisting federal statutory and common law rights to the 1 800 CONTACTS Marks.

93.     The 1 800 CONTACTS Marks are distinctive to both the consuming public and to 1-800 Contacts' trade.

94.     1-800 Contacts has expended substantial time, money, and resources on marketing, advertising, and promoting its goods and services sold under the 1 800 CONTACTS Marks.

95.     Warby Parker is engaged in the use in commerce of the 1 800 CONTACTS Marks, without authorization or permission, to place advertisements and links to webpages that create a likelihood of confusion about the source, sponsorship, or affiliation of Warby Parker's contact lens goods and services, based on its purchase of the 1 800 CONTACTS Marks as keywords for placement of misleading ads targeted to consumers searching for 1-800 Contacts.

96.     Warby Parker's actions are willful and done with the deliberate intent to trade on the goodwill of the 1 800 CONTACTS Marks, cause confusion and deception in the marketplace, and divert prospective sales of 1-800 Contacts' goods and services to Warby Parker.

97.     Warby Parker's unauthorized use in interstate commerce of the 1 800 CONTACTS Marks as alleged herein is likely to confuse, cause mistake, or deceive consumers as to the origin, source, sponsorship, or affiliation of Warby Parker's goods

and services.  It is also likely to cause consumers to believe, contrary to fact, that Warby

Parker's goods and services are sold, authorized, endorsed, or sponsored by 1-800

Contacts or that Warby Parker is in some way affiliated with or sponsored by 1-800

Contacts.  Warby Parker's conduct therefore constitutes trademark infringement in

violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

98.     Warby Parker has used and continues to use in interstate commerce the

registered 1 800 CONTACTS Marks to purchase and display ads in connection with the

sale, offering for sale, distribution, and advertising of goods and services with

advertisements and a landing webpage that are likely to cause confusion, mistake, or

deception as to the origin, sponsorship, or approval of Warby Parker's goods and

services.  This conduct constitutes infringement of 1-800 Contacts' federally registered

marks, in violation of 15 U.S.C. § 1114.

99.     Upon information and belief, Warby Parker has committed the foregoing

acts of infringement with full knowledge of 1-800 Contacts' prior rights in the 1 800

CONTACTS Marks and with the willful intent to cause confusion and trade on 1-800

Contacts' goodwill.

100.    Warby Parker's conduct is causing immediate and irreparable harm and

injury to 1-800 Contacts, and to its goodwill and reputation, and will continue to both

damage 1-800 Contacts and to confuse the public unless enjoined by this Court.  1-800

Contacts has no adequate remedy at law.

101.    1-800 Contacts is entitled to, among other relief, injunctive relief and an

award of actual damages, an accounting of Warby Parker's revenue and profits from

these infringements, enhanced damages, reasonable attorney fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with pre-judgment and post-judgment interest.

102.    Warby Parker's actions complained of in this Complaint are likely to cause, and may already have caused, 1-800 Contacts damage and injury and have unjustly enriched Warby Parker.  Unless enjoined by this Court, Warby Parker will continue to do the acts complained of in this Complaint and cause damage and injury, all to 1-800 Contacts' irreparable harm and to Warby Parker's unjust enrichment.

**COUNT II**
**Lanham Act – Federal Unfair Competition, in Violation of 15 U.S.C. § 1125(a)**

103.    1-800 Contacts re-alleges and incorporates the allegations of Paragraphs 1 through 102, inclusive, of this Complaint by reference into this Count as if fully set forth herein.

104.    1-800 Contacts' acts described in this Complaint constitute a violation of federal unfair competition law as Warby Parker has used, and continues to use (without authorization or permission), in interstate commerce words, terms, symbols, devices, names, or combinations thereof, or a false designation of origin, which are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Warby Parker with 1-800 Contacts, or as to the origin, sponsorship, approval, or endorsement of Warby Parker's goods and services by 1-800 Contacts, contrary to fact, in violation of 15 U.S.C. § 1125(a).

105.    Warby Parker's unauthorized use in commerce of the 1 800 CONTACTS Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

106.    Upon information and belief, Warby Parker's actions as alleged herein have been, and are, willful, intentional, deliberate, done with knowledge of 1-800 Contacts' rights, and are intended to, and are likely to, cause confusion, mistake, or deception as to the affiliation, connection, or association of Warby Parker with 1-800 Contacts.

107.    Warby Parker's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

108.    1-800 Contacts has no adequate remedy at law.  Warby Parker's actions complained of in this Complaint are likely to cause, and may already have caused, damage, injury, and irreparable harm to 1-800 Contacts and 1-800 Contacts' goodwill and reputation and have unjustly enriched Warby Parker.  Unless enjoined by this Court, Warby Parker will continue to do the acts complained of in this Complaint, confuse the public, and cause damage and injury, all to 1-800 Contacts' irreparable harm and to Warby Parker's unjust enrichment.

109.    1-800 Contacts is entitled to, among other relief, injunctive relief and an award of actual damages, an accounting of Warby Parker's profits from these infringements, enhanced damages, reasonable attorney fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with pre-judgment and post-judgment interest.

## COUNT III
### Violation of New York Common Law – Trademark Infringement

110.    1-800 Contacts re-alleges and incorporates the allegations of Paragraphs 1 through 109, inclusive, of this Complaint by reference into this Count as if fully set forth herein.

111.    1-800 Contacts holds valid and protectable rights in the 1 800 CONTACTS Marks.

112.    Warby Parker's unauthorized use of the 1 800 CONTACTS Marks to place misleading and confusing advertisements as described above constitutes misuse and infringement of the 1 800 CONTACTS Marks.

113.    Warby Parker's conduct set forth above is likely to result in consumer confusion and deception.

114.    1-800 Contacts has suffered damages as a result of Warby Parker's conduct as described above.

115.    Accordingly, 1-800 Contacts should be awarded its actual damages suffered, costs, and preliminary and permanent injunctive relief under New York law.

## COUNT IV
### Violation of New York Common Law – Unfair Competition

116.    1-800 Contacts re-alleges and incorporates the allegations of Paragraphs 1 through 115, inclusive, of this Complaint by reference into this Count as if fully set forth herein.

117.    Warby Parker's acts as set forth above, including, but not limited to, its trademark infringement, deceptive advertising, and unfair competition, constitute bad

faith misappropriation of the labors and expenditures of 1-800 Contacts and constitute unfair competition under New York common law.

118.    Accordingly, 1-800 Contacts should be awarded actual damages suffered, costs, and preliminary and permanent injunctive relief under New York law.

119.    As the result of Warby Parker's willful and bad faith actions, 1-800 Contacts should be awarded punitive damages in an amount to be determined.

## PRAYER FOR RELIEF

WHEREFORE, 1-800 Contacts respectfully requests that the Court enter judgment in its favor and against Warby Parker, granting the following relief:

A.    judgment in favor of 1-800 Contacts and against Warby Parker on all claims;

B.    judgment that Warby Parker has infringed and is infringing the 1 800 CONTACTS Marks and 1-800 Contacts' trade name;

C.    judgment that such infringement by Warby Parker was and is willful;

D.    an award of all damages sustained by 1-800 Contacts in an amount to be determined at trial;

E.    an accounting and disgorgement to 1-800 Contacts of Warby Parker's profits from its unlawful conduct as set forth above;

F.    an award of statutory damages to 1-800 Contacts;

G.    an order that Warby Parker compensate 1-800 Contacts for the advertising or other expenses necessary to combat any public confusion caused by Warby Parker's

infringement of the 1 800 CONTACTS Marks, unfair competition, misappropriation, breach of contract, and other unlawful acts;

H.      an order permanently enjoining and restraining Warby Parker and its officers, agents, servants, employees, successors, assigns, parents, partners, consultants, subsidiaries, affiliated or related companies, attorneys, and all others in active concert or participation with them who receive notice of this injunction from:

    i)      using any of the 1 800 CONTACTS Marks or any confusingly similar mark, name, domain name, or colorable imitation thereof, in connection with Warby Parker's business which may in any way mislead or confuse anyone as to the source, affiliation, or sponsorship of such business, including through use of the 1 800 CONTACTS Marks in keyword search advertising by paying for, or bidding on, search advertising keywords containing the 1 800 CONTACTS Marks or any confusingly similar mark, name, domain name, or colorable imitation thereof to post an advertisement or linked webpage that may create a likelihood of consumer confusion;

    ii)     infringing any of the 1 800 CONTACTS Marks or the 1-800 Contacts trade name;

    iii)    unfairly competing with 1-800 Contacts in the manufacture, importation, advertising, sale, offering for sale, shipment, and/or distribution of contact lenses, or related goods and services such as eye examinations;

- 35 -

iv)   injuring 1-800 Contacts' business reputation and the goodwill
associated with the 1 800 CONTACTS Marks and from otherwise
unfairly competing, directly or indirectly, with 1-800 Contacts;

v)   causing a likelihood of confusion or misunderstanding as to source,
sponsorship, association, affiliation, approval, or certification with or
by 1-800 Contacts, or engaging in conduct tending to create a false
commercial impression of Warby Parker's goods or services or any
other conduct which tends to pass off Warby Parker's goods or
services as those of 1-800 Contacts or creates a likelihood of confusion
or misunderstanding or false representation;

vi)   disposing of, destroying, moving, secreting, relocating, and/or
transferring any information, records, and/or documents in Warby
Parker's possession pertaining to the claims against which judgment
has been granted in favor of 1-800 Contacts and against Warby Parker;
and

vii)   assisting, aiding, or abetting any other person or business entity in
engaging in or performing any of the aforementioned activities;

I.      an order directing Warby Parker to file with the Court, and to serve on 1-
800 Contacts, within thirty (30) days after entry of the above injunction, a report in
writing, under oath, setting forth in detail the manner and form in which it has
complied with the injunction;

J.      an order directing Warby Parker to account for, and pay over to 1-800 Contacts, its sales revenue, including all profits and unjust enrichment and all damages sustained by 1-800 Contacts as a result of Warby Parker's unlawful conduct;

K.      an award to 1-800 Contacts of enhanced damages as provided by law to fully compensate 1-800 Contacts and punitive damages for the willful and wanton nature of Warby Parker's wrongful acts and because this is an "exceptional" case;

L.      an award to 1-800 Contacts of its costs and expenses, including all reasonable attorney fees and costs recoverable under the Lanham Act, New York common law, New York statutory law, and any other applicable law or rule;

M.      an award to 1-800 Contacts of pre-judgment and post-judgment interest; and

N.      such other and further relief as the Court deems just and equitable.

## JURY DEMAND

1-800 Contacts demands a trial by jury on all matters and issues properly tried to a jury pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure and other applicable federal and state laws.

Dated:  August 18, 2021

By:   ___/s/ Stephen R. Fishbein_____

Stephen R. Fishbein
sfishbein@shearman.com
Susan Loeb
(not yet admitted in this District)
susan.loeb@shearman.com
SHEARMAN & STERLING LLP
599 Lexington Avenue

New York, NY 10022
Tel: (212) 848-4424

Todd M. Stenerson
todd.stenerson@shearman.com
Ryan A. Shores
ryan.shores@shearman.com
Brian C. Hauser
(*pro hac vice application forthcoming*)
brian.hauser@shearman.com
SHEARMAN & STERLING LLP
401 9th Street NW
Washington, DC 20004
Tel: (202) 508-8093

Steven J. Joffee
(*pro hac vice application forthcoming*)
sjoffee@michaelbest.com
Jeffrey H. Brown
(*pro hac vice application forthcoming*)
jhbrown@michaelbest.com
Stephen J. Horace
(*pro hac vice application forthcoming*)
sjhorace@michaelbest.com
Thomas A. Agnello
(*pro hac vice application forthcoming*)
taagnello@michaelbest.com
MICHAEL BEST & FRIEDRICH LLP
170 South Main Street, Suite 1000
Salt Lake City, Utah 84101
Tel:  (385) 695-6450
Fax: (801) 931-2500

***Attorneys for Plaintiff,***
***1-800 Contacts, Inc.***