The Honorable P. Kevin Castel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 1-800 CONTACTS, INC.      ) | |
|           ) | Case No. 21-CV-06966 (PKC) |
| Plaintiff,      ) | |
|           ) | |
| v.      ) | **Jury Trial Demanded** |
|           ) | |
| JAND, INC. d/b/a WARBY PARKER      ) | |
|           ) | |
| Defendant.      ) | |
|           ) | |

Defendant JAND, INC. d/b/a WARBY PARKER ("Defendant" or "Warby Parker"), by and through its undersigned attorneys, hereby answers the complaint of Plaintiff 1-800 CONTACTS, INC. ("Plaintiff"), as follows:

## COMPLAINT

### Nature of the Action:

1.      This is an action to stop and remedy Defendant Warby Parker's continuing trademark infringement, unfair competition, and deceptive advertising practices. Plaintiff 1-800 Contacts is a well-known pioneer in the online contact lens marketplace. Over the past three decades, 1-800 Contacts has expended hundreds of millions of dollars on advertising, marketing, and promotion to cultivate strong consumer recognition of its brand, services, and trademarks

**ANSWER:**  Defendant denies the allegations of paragraph 1, except that Defendant denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiff's expenditures relating to advertising, marketing, and promotion.

2.      1-800 Contacts' investments and decades-long commitment to its customers has paid off, as the company now serves *millions* of customers. Indeed, between June 1, 2020, and

June 30, 2021, alone, the 1800contacts.com website averaged more than 1.5 million unique visitors monthly.

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 2.

3.      1-800 Contacts is an online— rather than a brick-and-mortar —retailer, so millions of customers and prospective customers reach 1-800 Contacts by navigating to the 1800contacts.com website. In an effort to navigate to its online store at the 1800contacts.com website, many consumers type "1800 Contacts," "1 800 Contacts," "1800contacts.com," "1800contacts," or other of 1-800 Contacts' trademarks as search terms in search engines such as Google.

**ANSWER**:  Defendant denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 3.

4.      This type of targeted, *navigational* search differs from a search where consumers search for a *product* name (which may be for informational purposes) or use a general *transactional* search query (such as "buy contact lenses online"), in which case the searchers may not intend to navigate to a specific retailer's website. Consequently, when consumers search for one of 1-800 Contacts' trademarks, they reasonably intend to reach the 1800contacts.com online store or to obtain information regarding 1-800 Contacts and these consumers reasonably expect the initial links displayed by the search engine to take them to 1-800 Contacts' website. Any other outcome would be contrary to their intent and expectations.

**ANSWER:**  Defendant denies the allegations of paragraph 4.

5.      Warby Parker, primarily a retailer of eyeglasses, is a new entrant in the online contact lens marketplace and has relatively low consumer recognition for contacts. Instead of independently developing its own brand awareness related to the online sales of contacts, Warby

Parker has devised a plan to confuse and mislead consumers who seek to go to 1-800 Contacts' online store. Warby Parker's plan is designed in purpose and effect to trade off 1-800 Contacts' brand name and reputation through unauthorized bidding on 1-800 Contacts' trademarks as search engine keywords that generate Warby Parker advertisements. Such conduct exposes consumers to source-ambiguous Warby Parker advertisements and a deep linked webpage that confuses consumers.

**ANSWER:**  Defendant denies the allegations of paragraph 5, with the exception that Defendant admits that it is an online retailer of contact lenses.

6.      By its deliberate use of the 1-800 Contacts registered trademarks to place ambiguous ads that generate source, sponsorship, or initial interest confusion and to unfairly compete with 1-800 Contacts, Warby Parker has usurped and continues to usurp the valuable goodwill that 1-800 Contacts has built in its marks through the high quality of its offerings, its exceptional customer service, and its substantial investments in advertising, marketing, and promotions.

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the goodwill that Plaintiff has built in its marks and further denies the remaining allegations of paragraph 6.

7.      Warby Parker's plan unfairly relies on the strength of 1-800 Contacts' trademarks by placing ads designed to confuse consumers searching for 1-800 Contacts by, among other things, directing these consumers to a deep linked Warby Parker landing webpage that deceptively and intentionally mimics the look and feel of 1-800 Contacts' website, including through use of a confusingly similar color scheme, layout, and discount offering, along with imagery evoking the 1800contacts.com website.

3

**ANSWER:** Defendant denies the allegations of paragraph 7. Defendant denies that Plaintiff possesses a valid, protectable proprietary interest in the "look and feel" or color scheme of its website.

8.     In particular, Warby Parker bids on 1-800 Contacts' distinctive trademarks to make search engine keyword purchases with Google and other search engines. By doing so, Warby Parker arranges to place its own ads at or near the top of the Google search results page that appears after a consumer searches for 1-800 Contacts or one of its trademarks. Warby Parker then knowingly and intentionally presents those consumers with ads that appear to be from 1-800 Contacts or an approved affiliate, licensee, or associate of 1-800 Contacts. Warby Parker's resulting keyword ads do not provide any language inviting consumers to compare Warby Parker's goods or services with 1-800 Contacts or otherwise identifying Warby Parker as a competitor of the company for which the consumer searched.

**ANSWER:** Defendant denies the allegations of paragraph 8, except that Defendant admits that: (i) it engages in keyword advertising with Google and other search engines that facilitates the placement of its ads at or near the top of search result pages; and (ii) Defendant's resulting keyword ads do not engage in comparative advertising or otherwise use 1-800 Contacts in the keyword ads.

9.     Moreover, Warby Parker deceptively deep links those ads to a landing webpage at the Warby Parker website that is not conspicuously identifiable as that of a competitor but rather mimics key elements of the 1-800 Contacts website. Such mimicry causes consumers who view that webpage to reasonably —but mistakenly—conclude that the webpage they have reached is 1-800 Contacts or a service that is affiliated with, associated with, sponsored by, approved by, or endorsed by 1-800 Contacts.

**ANSWER:**  To the extent that the allegations of paragraph 9 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

10.    When consumers familiar with the 1-800 Contacts website-1800contacts.com— arrive at the Warby Parker webpage linked to Warby Parker's deceptive ad, they see a familiar light blue colored background displaying representative contact lens products and a discount offer, just like that found at 1800contacts.com, such that they are falsely assured that they have reached the 1-800 Contacts website or one that is affiliated with 1-800 Contacts.

**ANSWER:**  Defendant denies the allegations of paragraph 10.

11.    For those unfamiliar with the 1800contacts.com website, Warby Parker deceptively provides no clear indication to consumers searching for 1-800 Contacts that the linked Warby Parker webpage is not a *site* owned by, or affiliated with, 1-800 Contacts. Instead, Warby Parker capitalizes on the deceptive ambiguity it has intentionally created to pass itself off as being affiliated or associated with 1-800 Contacts to consumers who unwittingly fall prey to this deception.

**ANSWER:**  Defendant denies the allegations of paragraph 11.

12.    The upshot of Warby Parker's conduct is as follows: Warby Parker's unauthorized use of 1-800 Contacts' well-known brand name and trademarks diverts a material number of customers who expected to be taken to 1-800 Contacts' website to a deep linked page at Warby Parker's website. Once there, some customers are confused by the deep-linked webpage that they reasonably believe to be affiliated with 1-800 Contacts, while others after arriving realize that they have been steered away from 1¬800 Contacts. In either scenario, Warby Parker makes contact lenses sales that they would not have otherwise made and illegally increases 1-800 Contacts' advertising costs. Warby Parker's ability to take advantage of 1-800

Contacts' decades of investment makes Warby Parker's bidding on 1-800 Contacts' brand name inherently unfair. This lawsuit seeks to remedy Warby Parker's past and ongoing trademark infringement and unfair competition.

**ANSWER:** To the extent that the allegations of paragraph 12 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

## PARTIES

13.     1-800 Contacts is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 261 West Data Drive, in Draper, Utah.

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 13.

14.     Upon information and belief, Warby Parker is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business at 233 Spring Street, 6th Floor East, in New York, New York.

**ANSWER:** Defendant admits to the allegations of paragraph 14.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity of citizenship), 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks), 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws), and/or 28 U.S.C. § 1367 (supplemental jurisdiction).

**ANSWER:** To the extent the allegations of paragraph 15 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent a response is required, Defendant admits that the Court has subject matter jurisdiction.

16.    1-800 Contacts' claims arise under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*; New York common law; and New York General Business Law § 349.

**ANSWER:**  To the extent the allegations of paragraph 16 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent a response is required, Defendant denies the allegations.

17.    1-800 Contacts uses the trade name "1-800 Contacts" and trademarks including 1800CONNTACTS, 1 800 CONTACTS, and 1800CONTACTS.COM in interstate commerce in connection with the online sale of contact lenses and related goods, including a full range of contact lens brands and online vision exams.

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 17.

18.    Beginning on or about November 2019, Warby Parker began selling contact lenses nationwide, including in this district, through its warbyparker.com website and at its stores, Warby Parker is now a competitor of 1-800 Contacts in the online retail sale of contact lenses.

**ANSWER:**  Defendant admits that in or around November 2019 it began selling contact lenses nationwide through its warbyparker.com website and at its stores.  Defendant further admits that it is a competitor of Plaintiff and other third party sellers of contact lenses.

19.    This Court has personal jurisdiction over Warby Parker because Warby Parker's principal place of business is in New York and within this judicial district, Warby Parker transacts substantial business in New York and within this judicial district, and Warby Parker committed and continues to commit acts of infringement in violation of 15 U.S.0 § 1114 and 1125 in New York and within this judicial district.

**ANSWER:**  To the extent the allegations of paragraph 19 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent a response is required, Defendant admits that the Court has personal jurisdiction over Defendant in this action.

20.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

**ANSWER:**  To the extent the allegations of paragraph 20 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent a response is required, Defendant admits that venue is proper in this action.

## BACKGROUND

### *1-800 Contacts and the 1 800 CONTACTS Marks*

21.    Since 1996, 1-800 Contacts has sold contact lenses through its 1800contacts.com website under its distinctive "1 800 CONTACTS" trademark and variations thereof (collectively, the "1 800 CONTACTS Marks").

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 21.

22.    The 1 800 CONTACTS Marks include several federally registered trademarks containing the term "1 800 Contacts" and variations thereof, including:

| Mark | Reg. No. | Goods/Services | Registered |
|---|---|---|---|
| 1800CONTACTS | 2675866 | (Intl Class: 35) mail order and telephone order services in the field of contact lenses and related products, and electronic retailing services via computer featuring contact lenses and related products | January 21, 2003 |
| 1 800 CONTACTS (Stylized)<br><br>1800contacts | 5131335 | (Int'l Class: 09) Contact lenses (Intl Class: 35) On-line retail store services featuring contact lenses | January 31, 2017 |
| 1800CONTACTS.COM | 3833549 | (Int'l Class: 35) Mail order and telephone order services in the field of contact lenses and related products, and on-line retail store services featuring contact lenses and related products | August 17, 2010 |

Attached and incorporated by reference into this Complaint as **Exhibit 9** are true and correct

copies of U.S. Patent and Trademark Office records showing the active status of each U.S.

federal trademark registration identified above.

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to

the allegations of paragraph 22.

23.    The registrations for the 1 800 CONTACTS Marks are in full force and effect on

the United States Patent and Trademark Office's Principal Register.

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to

the allegations of paragraph 23.

24.    The registration for the 1 800 CONTACTS mark (Registration No. 2675866) is

incontestable under 15 U.S.C. § 1065 and constitutes conclusive evidence of the validity of the

registered mark and of the registration of the mark, of 1-800 Contacts' ownership of the mark,

9

and of 1-800 Contacts' exclusive right to use the registered mark in commerce in connection with the services specified in the registration, pursuant to 15 U.S.C. § 1115(b).

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 24.

25.   1-800 Contacts has used the 1 800 CONTACTS Marks (including on the 1800contacts.com website) extensively and has realized substantial sales of goods and services under the marks.

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 25.

26.   The 1 800 CONTACTS Marks are recognized as identifying goods and services provided by 1-800 Contacts. The 1 800 CONTACTS Marks are distinctive in the marketplace and closely associated by consumers with 1-800 Contacts and as a source-identifier for 1-800 Contacts' offerings.

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 26.

27.   1-800 Contacts has expended hundreds of millions of dollars—through longstanding and extensive advertising, marketing, and promotion, coupled with an intense focus on customer service and advocating for consumer protection— to cultivate consumer recognition for the 1 800 CONTACTS Marks, and 1-800 Contacts enjoys valuable goodwill associated with the 1 800 CONTACTS Marks.

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 27.

28.    1-800 Contacts' consumer protection efforts have included successfully leading advocacy for federal legislation allowing consumers access to their contact lens prescriptions, fighting contact lens manufacturers over anti-consumer pricing models, and more recently, promoting telehealth laws to provide greater access to health care.

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 28.

29.    1-800 Contacts and the 1 800 CONTACTS Marks also have been featured in prominent media outlets across the United States, including *the New York Times, Wall Street Journal, New York Post, Chicago Tribune, Salt Lake Tribune, Denver Post, Los Angeles Times, Houston Chronicle, Washington Post, Atlanta Journal-Constitution*, and CNN.

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 29.

30.    Customer service is a company hallmark of 1-800 Contacts and has been crucial to 1-800 Contacts' success. Indeed, over the last quarter century, 1-800 Contacts has earned many accolades for superior customer service. To take just one example, in 2021, Newsweek bestowed upon 1-800 Contacts the coveted "Best Customer Service" award and the number one ranking in the "Contact Lenses (Online)" category. "America's Best Customer Service Companies," *Newsweek*, *available at* https://www.newsweek.com/americas-best-customer-service-2021 (visited July 26, 2021).

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 30.

31.    1-800 Contacts has been rated the "Best overall" place to buy contact lenses online, and the "180000NTACTS trademark" has become a "household name." *Available at*

https://greatist.com/discover/best-places-to-buy-contacts-online#Pricing-guide (visited July 26, 2021)).

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 31.

### *Search Engine Advertising*

32.    One way companies pay to advertise products on the internet is through "search advertising." "Search advertising" consists of advertisers bidding on keywords that generate paid search results in auctions hosted by the search engines.

**ANSWER:** Defendant admits to the allegations of paragraph 32.

33.    When online shoppers use a search engine such as Google or Microsoft Bing (formerly known simply as "Bing") to search for 1-800 Contacts, that engine's program returns two main types of search results to the shoppers: (1) sponsored, or paid, search results, and (2) organic, or natural, search results. Both sponsored and organic search results provide links to webpages.

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 33.

34.    "Paid search" results are advertisements.

**ANSWER:** It is not clear what the term "paid search" means in paragraph 34 and therefore, Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 34.

35.    "Natural search" results comprise "[t]he non-paid results of a search query" and consist of "links found by the search engine based on the content of web sites" as determined by

Google's proprietary algorithm. "Search Ads 260 Overview, *available at* https://support. google.com/searchads/answer/7383332?hl=en  (visited July 26, 2021).

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 35 and refers to the link contained in paragraph 35 for a recitation of the contents thereof.

36.     Although the exact methodology Google uses for natural searches is proprietary, it is generally designed to determine what searchers are looking for based on the number of websites visited and ads clicked by previous users who performed the same search. In other words, organic or natural results appear based exclusively on which results a search engine's algorithm deems to be most relevant to the shopper's search. Thus, the results of natural searches for trademarked terms are an informal survey of the association that consumers draw between the given mark and the company using that mark.

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 36.

37.     In contrast, sponsored or paid results appear because the owner of the featured webpage has paid for its advertisement and link to appear in response to that search.

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 37.

38.     Notably, when a consumer conducts a search*, the paid, or bid for, advertisements appear first in the search results*. These advertisements are accompanied by a small designation signaling they are an "Ad." The "Ad" designation does not indicate whether the party displaying the ad is the owner of the trademarked product or service that was the subject of the shopper's search.

**ANSWER:**  Defendant admits that Google® Ads are accompanied by a designation signaling they are an Ad, denies that the Ad designation is "small" and denies that the Ad designation does not indicate the party displaying the ad.  Defendant denies knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 38.

39.      Approximately 92% of all Internet search engine searches are conducted on Google, which is the most visited website in the world. "Google Revenue Surges as Online Advertising Market Thrives, *The Wall Street Journal* (July 27, 2021), *available at* https://www.wsj.com/articles/google-alphabet-googl-2q-earnings-report-2021-11627344309 (visited Aug. 3, 2021) (noting that "Google is the world's largest digital ad company by revenue," and Google's "search engine has a 92% share of world-wide internet searches"); "Search Engine Market Share Worldwide" data from *Statcounter* for June 2020 through June 2021, *available at* https://gs.statcounter.com/search-engine-market-share (visited July 27, 2021) (showing Google market share of 92.47% for June 2021).

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 39.

40.      Google search results include "natural search" and "paid search" results.

**ANSWER:**  It is not clear what the terms "natural search" and "paid search" mean in paragraph 40 and therefore, Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 40.

41.      Google Ads (formerly Google AdWords) is an online advertising platform developed by Google through which advertisers bid to place advertisements on the search engine results page. These advertisements contain a Uniform Resource Locator — i.e., a web address— that links to the advertiser's chosen website landing webpage.

**ANSWER:** Defendant admits the allegations of paragraph 41.

14

42.    Using Google Ads, an advertiser can strategically place advertisements in the results of searches. The Google Ads services are offered under a pay-per-click pricing model in which an advertiser pays Google based on how many consumers click on its advertisements that appear in the paid search results.

**ANSWER:**  Defendant admits that it engages in keyword advertising with Google and other search engines that facilitates the placement of its ads at or near the top of search result pages.  Defendant otherwise denies knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 42.

43.    Search engines generally do not limit the keywords available to advertisers at auction.

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 43.

44.    As a result, in lieu of or in addition to bidding on descriptive or generic terms, some companies bid on a competitor's brand names or trademarks so that the company's advertisement runs when a consumer searches for that particular competitor.

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 44.

45.    For example, Google Ads currently does not prevent companies from bidding on trademarks as "keywords," even if the bidding company does not own the trademark and the trademark is instead owned and registered by the bidding company's competitor.

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 45.

46.    If a competitor of a trademark owner successfully bids at Google Ads on a keyword that consists of a trademark owner's name or trademark, the competitor's ad will appear first or high in the Google search results for the trademark owner's name or trademark, along with a small "Ad" notation.

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 46.

47.    The competitor's ad that appears as a result of such a keyword winning purchase may unlawfully mislead, confuse, or deceive consumers who conducted a navigational search intending and expecting to instead locate the owner of the trademark for which they searched. This occurs, for example, when consumers are confused into thinking that the competitor is the trademark owner, or that the competitor, ad, or linked webpage is sponsored by, licensed by, endorsed by, approved by, or otherwise affiliated or associated with the trademark owner.

**ANSWER:**  To the extent that the allegations of paragraph 48 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 47.

48.    The risk of initial interest, consumer source, sponsorship, or affiliation confusion, as well as deception or mistake is heightened in the context of keyword advertising using a competitor's trademark because consumers searching for the trademark of a particular retailer generally intend to reach the website of that retailer and many consumers assume that the top search results are associated with the company or brand for which they searched.

**ANSWER:** To the extent that the allegations of paragraph 48 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

### *Warby Parker's Unlawful Scheme*

49. Since its founding in 2010, Warby Parker has held a reputation as an eyeglasses company and consumers generally associate the company with eyeglasses. Indeed, the "Our History" narrative on Warby Parker's website discusses eyeglasses but makes no mention of contact lenses. Attached as **Exhibit 1** is a true and correct copy of a webpage titled "History" at Warby Parker's website, *available at* https://www.warbyparker.com/history (visited Aug. 16, 2021) (discussing eyeglasses but not contact lenses).

**ANSWER:** Defendant admits that it is recognized as a company that sells eyeglasses but denies the remaining allegations of paragraph 49.

50. In 2013, Warby Parker opened its first brick-and-mortar stores and showrooms for its eyeglasses and sunglasses. Initially, these stores did not sell contact lenses.

**ANSWER:** Defendant admits to the allegations of paragraph 50.

51. Warby Parker uses the trade name and trademark "Warby Parker" in connection with online and retail sales of eyeglasses, sunglasses, and more recently, contact lenses.

**ANSWER:** Defendant admits to the allegations of paragraph 51.

52. Beginning in or about November 2019, Warby Parker began selling contact lenses.

**ANSWER:** Defendants admits to the allegations of paragraph 52 as it applies to sales of contact lenses online.

53.    As a newer and much smaller entrant into the online contact lens business, Warby Parker, in contrast to 1-800 Contacts, is not well known to consumers as a provider of contact lenses.

**ANSWER:**  Defendant denies the allegations of paragraph 53.

54.    Thus, consumers do not readily associate Warby Parker with contact lenses or identify Warby Parker as a competitor of 1-800 Contacts.

**ANSWER:**  Defendant denies the allegations of paragraph 54.

55.    At or around the time that Warby Parker began selling contact lenses, it devised a plan to trade on the great strength and goodwill of the 1 800 CONTACTS Marks by using keyword advertising, ambiguous ads, and a deep-linked webpage to confuse consumers by diverting those looking for the 1800contacts.com website to the warbyparker.com website.

**ANSWER:**  Defendant denies the allegations of paragraph 55, except that Defendant admits that it uses keyword advertising, including the 1800 CONTACTS Marks, to facilitate the sale of contact lenses.

56.    In or around November 2019, Warby Parker began purchasing the 1 800 CONTACTS Marks as keywords on Google and other internet search engines, which caused consumers searching for 1-800 Contacts to see ads that could reasonably be viewed as being from 1-800 Contacts (or an affiliate or licensee of 1-800 Contacts) but were actually for 1-800 Contacts' competitor, Warby Parker.

**ANSWER:**  Defendant denies the allegations of paragraph 56, except that Defendant admits that it uses keyword advertising, including the 1800 CONTACTS Marks, to facilitate the sale of contact lenses.

57.    Warby Parker continues this practice today.

18

**ANSWER:**  Defendant denies the allegations of paragraph 57, except that Defendant admits that it uses keyword advertising, including the 1800 CONTACTS Marks, to promote facilitate the sale of contact lenses.

58.    For example, a recent search for "1 800 contacts" on Google generated the following result:

Attached as **Exhibit 2** is a true and correct copy of a screenshot of a July 26, 2021 Google search for "1 800 contacts."

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 58.

59.    In the above screenshot (**Exhibit 2**), a Warby Parker advertisement appears as the first search result.

**ANSWER:**  Defendant admits the allegations of paragraph 59 and refers to Exhibit 2 referenced therein for a recitation of the contents thereof.

60.    The Warby Parker advertisement fails to identify Warby Parker in the headline or in the content of the advertisement. Nor does the advertisement clearly indicate that the website is not owned by, or affiliated with, 1-800 Contacts.

**ANSWER:** Defendant presumes the "Warby Parker advertisement" in this paragraph refers to Exhibit 2 referenced in paragraph 59, and denies that it fails to identify Warby Parker in connection with the content of the first search result as shown therein.  Warby Parker is clearly identified in the domain name for the link presented at the top of the first search result. Defendant otherwise denies the remaining allegations of paragraph 60 and refers to Exhibit 2 referenced therein for a recitation of the contents thereof.

61.    The warbyparker.com domain name text also appears in a smaller font and less prominent color - black - than the bright blue advertisement headline. Many consumers who scan the search results, particularly on a mobile device that displays fewer search results on the initial search engine results page, will focus on the larger, brighter-colored, and more conspicuous ad text and not notice the smaller, black domain name text.

**ANSWER:**  Defendant denies the allegations of paragraph 61 and refers to Exhibit 2 referenced therein for a recitation of the contents thereof.

20

62.    The only potential signal to consumers that the Warby Parker advertisement was not an ad of 1-800 Contacts, or an affiliate or licensee of 1-800 Contacts, is the warbyparker.com domain name, which is not meaningful to most online contact lens purchasers because Warby Parker is a new and relatively unknown online retailer of contact lenses.

**ANSWER:**  Defendant denies the allegations of paragraph 62.  Warby Parker's WARBY PARKER trademarks and tradenames are well known trademarks and have been continuously used and registered in connection with all of Defendant's different product categories.

63.    Warby Parker's plan creates a particularly significant likelihood of confusion for consumers who engage in navigational searches. The primary purpose of navigational searches is to locate a specific website. When consumers engage in navigational searches using a keyword corresponding to a specific business, their reasonable expectation is to use the search engine as a shortcut to "navigate" directly to that company's website.

**ANSWER:**  To the extent that the allegations of paragraph 63 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies that it engages in any "plan" resulting in likelihood of confusion for consumers, or that Warby Parker's use of keywords creates a likelihood of confusion for consumers. Defendant further denies knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 63.

64.    In contrast to consumers who search for a product's brand name, search queries that involve a retailer's brand name or trademark are likely made with a navigational intent. That is, consumers searching for an online retailer's brand name or trademark generally intend to navigate directly to that retailer's website.

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 64.

65.    Navigational searchers for the 1 800 CONTACTS Marks or 1-800 Contacts' "1800contacts.com" domain name typically intend and expect to navigate to 1-800 Contacts' 1800contacts.com website.

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations of paragraph 65.

66.    Warby Parker magnifies this confusion by using a landing webpage for the warbyparker.com deep link shown in the "1 800 contacts" Google search results in **Exhibit 2** above (the "Deep Linked Ad Page"). The Deep Linked Ad Page in the paid search advertisements that are triggered in response to searches for a 1 800 CONTACTS Mark is similar to 1-800 Contacts' standard website homepage. Warby Parker intentionally used the Deep Linked Ad Page to mimic the recognizable and distinctive look and feel that 1-800 Contacts has used at 1800contacts.com for the purpose of brand identification and which has become associated with 1-800 Contacts in the minds of online contact lens purchasers.

**ANSWER:**  To the extent that the allegations of paragraph 63 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations of paragraph 66. Defendant further denies that Plaintiff possesses a valid, protectable proprietary interest in the "look and feel" of its website, including that it has not acquired distinctiveness.

67.    The Warby Parker keyword advertisement shown in Paragraph 58 above—which is positioned as the top result in a "1 800 contacts" search—presents a deep link leading to a unique warbyparker.com landing webpage that is different from the look and feel of Warby Parker's homepage and that features coloring and a presentation that is confusingly similar to 1-800 Contacts' website.

**ANSWER:**  Defendant denies the allegations of paragraph 67.

68.     1-800 Contacts' website incorporates a recognizable and distinctive look and feel that is used for the purpose of brand identification and is associated with 1-800 Contacts in the minds of consumers. Since 1996, 1800contacts.com has continuously and prominently featured the color blue, and more than a decade ago, 1800contacts.com first prominently featured a shade of light blue on its homepage. Since April 2020, the latest iteration of this distinctive look and feel of 1-800 Contacts' website has included a light blue rectangular shaded box that spans most of the screen in a horizontal configuration and displays representative contact lens product packages to the right of a discount offer to "Get 20% off your first order." The 1800contacts.com standard website homepage contains this distinctive look and feel as shown below:



Attached as **Exhibit 3** is a true and correct copy of 1-800 Contacts' standard website homepage, 1800contacts.com (visited July 28, 2021).

**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the allegations relating to the iterations of Plaintiff's website, except denies that Plaintiff possesses a valid, protectable proprietary interest in the "look and feel" of its website.  Attached herein as **Exhibit A**, are true and correct copies of iterations of Plaintiff's website as indexed by the Internet Archives' Wayback Machine. Further, Multiple companies selling contact lenses online use the color blue and/or the same general layout as referenced in the allegations of paragraph 68 in connection with their online promotion, advertisement, and sale of contact lenses. Attached herein as **Exhibit B** to this Answer are true and correct copies of multiple third-party websites that present some combination of the following features: (i) a blue and/or a rectangular shaded box that spans most of the screen; (ii) a display of representative contact lens products; and (iii) and a discount offer.

69.     Warby Parker's landing webpage for its ads generated by search engine keyword searches for the 1 800 CONTACTS Marks usurps and mimics the look and feel of the 1800contacts.com website, further confusing consumers into believing they have arrived at a 1-800 Contacts site or an affiliated site.

**ANSWER:**  Defendant denies the allegations of paragraph 69 and further denies that Plaintiff possesses a valid, protectable proprietary interest in the "look and feel" of its website.

70.     In particular, the following is the landing webpage for the warbyparker.com deep link shown in the "1 800 contacts" Google search results in **Exhibit 2** above. The Deep Linked Ad Page, like the 1800contacts.com homepage, displays a rectangular box in nearly the same shade of light blue and features contact lens product packaging images to the right of a discount offer to "Get 15% off your first contacts order":

24



Attached as **Exhibit 4** is a true and correct copy of the Deep Linked Ad Page resulting from a

July 20, 2021 Google search for "1 800 Contacts," *available at*

https://www.warbyparker.com/contacts?bidkw=1800%20contacts&dvc=c&network=g&mobile=

&searchntwk=1&content=&creative=z18435/1426296&adposition=&placement

=&target=&keyword=1800%20contacts&matchtype=e&mkwid=s&pmt=e&pdv=c&pro

duct_categorr&utm_source=googlekuhn_rnedium=cpc&utm_term=1800%20contacts&utm_

campaign=Newengen_-_General_NB_-_Contacts_Competitors_1_DE1_3022&cvosampaign

=Newengen_-__General_NB_-_Contacts_Competitors_1_DE1_3022&cvo_adgroup=

87784974691&utm_term=87784974691-kwd-_28294831&utm_content=484354426296&

singular=124_g_7948108702_87784974691_484354426296&gclid=EAIaIQobChMIks

fonrzy8QIVBTI4Ch0onAtcEAAYAiAAEgJIFPD_BwE  (visited July 20, 2021).

    **ANSWER:**  Defendant denies that the website referenced in the allegations of paragraph

70 seeks to mimic Plaintiff's website. Defendant further denies the characterization of Warby

Parker's internal webpages as a "Deep Linked Ad Page". As referenced above, multiple companies selling contact lenses online use blue and/or the same general layout as Plaintiff's website in connection with their online promotion, advertisement, and sale of contact lenses. Defendant denies that Plaintiff possesses a valid, protectable proprietary interest in the "look and feel" of its website. Moreover, Defendant's website for its online sale of contact lenses matches the color, layout, and themes of Warby Parker's main homepage (www.warbyparker.com). Attached herein as **Exhibit C** to this Answer is a true and correct copy of Warby Parker's website for its online sale of contact lenses (www.warbyparker.com/contacts), and attached herein as **Exhibit D** to this Answer is a true and correct copy of Warby Parker's main homepage (www.warbyparker.com).

71.     In late December 2020, Warby Parker revamped the Deep Linked Ad Page color scheme and layout to even more closely resemble the updated 1800contacts.com website homepage layout adopted in April 2020. Warby Parker did so by transitioning the blue rectangular box at the Deep Linked Ad Page from one shade of blue to a lighter shade of blue that is nearly the same shade as the light blue rectangular box displayed on 1-800 Contacts' standard website homepage. Moreover, to further imitate the latest version of 1800contacts.com, Warby Parker began displaying —in the light blue rectangular box—contact lens product packaging images and a discount offer to "Get 15% off your first contacts order."

**ANSWER:**  Defendant denies each and every allegation of paragraph 71.

72.     Warby Parker's plan intentionally deceives and confuses consumers, who have a reasonable and legitimate expectation that their searches for the well-known 1 800 CONTACTS Marks will lead them to 1-800 Contacts' website, products, and services, not to a page created by a competitor seeking to pass itself off as 1-800 Contacts or an affiliate or licensee of 1-800 Contacts. Due to Warby Parker's plan, consumers are unable to determine immediately and conclusively whether or not Warby Parker's landing webpage resulting from paid searches for

the 1 800 CONTACTS Marks is affiliated with, associated with, sponsored by, endorsed by, or otherwise connected to 1-800 Contacts.

**ANSWER:** To the extent the allegations of paragraph 72 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

73.     Notably, the paid search ads Warby Parker pays search engines to display link to websites of distinctly different appearance depending on whether a user searches for the 1 800 CONTACTS Marks or "Warby Parker contacts." Consumers searching for "Warby Parker contacts" are led to a paid search ad for the webpage entitled "Contacts" at the Warby Parker website, which replicates the look and feel of the WarbyParker.com homepage and other pages at WarbyParker.com. However, for the paid search ads Warby Parker shows to 1-800 Contacts' customers and prospective customers searching for the 1 800 CONTACTS Marks, Warby Parker deceptively presents a landing page that is distinctively different from the one it provides to consumers who intentionally search for "Warby Parker contacts."

**ANSWER:** Defendant denies each and every allegation of paragraph 73, except that it admits that it maintains more than one webpage associated with its online sale and promotion of contact lenses. All of Warby Parker's webpages, including www.warbyparker.com/contacts (a true and correct copy of which is attached to this Answer as **Exhibit C**), compliment the design of Warby Parker's homepage (a true and correct copy of which is attached to this Answer as **Exhibit D**).

74.     The web page Warby Parker presents to 1-800 Contacts' customers and potential customers searching for a 1 800 CONTACTS Mark— the Deep Linked Ad Page—is much more similar to 1-800 Contacts' 1800contacts.com website than the rest of Warby Parker's warbyparker.com website and incorporates a look, feel, and color scheme confusingly similar to 1800contacts.com.

27

**ANSWER:**  Defendant denies the allegations of paragraph 74. Defendant further denies that Plaintiff possesses a valid, protectable proprietary interest in the "look and feel" or color scheme of its website.

75.      In contrast to the Deep Linked Ad Page Warby Parker presents to consumers seeking 1-800 Contacts' website, below is the landing webpage for a Warby Parker ad generated from a Google search for "Warby Parker contacts" (the "Warby Parker Contacts Ad Landing Webpage"):



Attached as **Exhibit 5** is a true and correct screenshot of the Warby Parker Contacts Ad Landing Page, *available at* https://www.warbyparker.com/contacts/offerings?bidkw= warby%20parker%20contacts&dvc=c&network=g&mobile=&searchntwk=1&content= &creative=430636082043&adposition=&placement=&target=&keyword=warby%20 parker%20contacts&matchtype=e&nakwid=s&pmt=e&pdv=c&product_category=&utin_

source=google&utm_medium=cpc&utm_term=warby%20parker%20contacts&utin_

campaign=Newengen-_Brand_-_Contacts_-_Scout_1_DE1811b&cvo_campaign=Newengen_-

_Brand_-_Contacts_-_Scout_1_DE1_811b&cvo_adgroup=82613507219&utm_

term=82613507219-kwd-382387980649&utmcontent=430636082043&singular=

124_g_7948041598_82613507219_430636082043&gclid=EAIaIQobChMIo_K5ysK28gIVL

v3jBx0YAAHQEAAYASAAEgLJ2_D_BwE (visited Aug. 16, 2021). Attached as **Exhibit 6** is

the August 16, 2021 Google search results page for "Warby Parker contacts," for which the first

search result led to the Warby Parker Contacts Ad Landing Page that is attached as **Exhibit 5**.

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to

the authenticity of the Internet searches referenced in the allegations of paragraph 75.


76.     The Deep Linked Ad Page differs from both the Warby Parker homepage at

warbyparker.com (shown below) (the "WP Website Homepage") and the Warby Parker Contacts

Ad Landing Page in an effort to mimic the look and feel of 1-800Contacts.com.



Attached as **Exhibit 7** (first page) is a true and correct screenshot of the WP Website Homepage, *available at* https://www.warbyparker.com/ (visited Aug. 16, 2021).

**ANSWER:**  Defendant denies the allegations of paragraph 76.  All of Warby Parker's webpages for its online promotion and sale of contact lenses, including www.warbyparker.com/contacts (a true and correct copy of which is attached to this Answer as **Exhibit C**), complement the design of Warby Parker's homepage (a true and correct copy of which is attached to this Answer as **Exhibit D**) and comports with Warby Parker's branding guidelines, true and correct copies of relevant portions of which are attached here as **Exhibit E**.

77.     In particular, the Deep Linked Ad Page contains a light blue shaded box near the top of the webpage that prominently spans most of the screen horizontally, displays contact lens product packaging images, and contains a discount offer in the same orientation as 1-800 Contacts' webpage. The WP Website Homepage and the Warby Parker Contacts Ad Landing Page look dramatically different. Neither features this light blue shaded box but rather contain a brown or gray shaded box and a white background, respectively, that prominently span most of the screen horizontally. Indeed, none of the other category pages on the Warby Parker website (i.e., Home Try-On, Eyeglasses, Sunglasses, and Get a Prescription) feature this light blue color or otherwise incorporate the same look and feel of 1800contacts.com. **Exhibit 7** (third through seventh pages containing screenshots from category webpages at the warbyparker.com website titled "Home Try-On," "Eyeglasses," "Sunglasses," and "Get a Prescription").

**ANSWER:**  Defendant denies that the webpages referenced in the allegations in paragraph 77 look "dramatically different" then or now. Defendant further denies that Plaintiff possesses a valid, protectable proprietary interest in the "look and feel" of its website.  The current Warby Parker homepage (www.warbyparker.com), a true and correct copy of which is attached to this Answer as **Exhibit D**, features a blue color that matches the blue color featured in Warby Parker's website for its online promotion and sale of contact lenses

(www.warbyparker.com/contacts), a true and correct copy of which is attached to this Answer as **Exhibit C**.

78.     Additionally, like the 1800contacts.com homepage—and unlike the WP Website Homepage and the Warby Parker Contacts Ad Landing Page— the Deep Linked Ad Page also contains a discount offer for consumers to get a certain percentage off a first contacts lens order.

**ANSWER:**  Defendant admits that the Warby Parker website for its online promotion and sale of contact lenses (www.warbyparker.com/contacts) offers a discount for consumers, but as referenced above, multiple companies selling contact lenses online offer similar discounts to customers.

79.     The color of the light blue shaded box on the Deep Linked Ad Page is substantially similar to the light blue color that comprises the shading of much of the 1800contacts.com homepage. Such light blue color shading features in a similarly prominent position on the top of the 1800contacts.com homepage as it does on the Deep Linked Ad Page. *Compare* **Exhibit 3** with **Exhibit 4**.

**ANSWER:**  Defendant denies the allegations of paragraph 79.

80.     Warby Parker's plan further exploits consumer expectations and creates consumer confusion by bidding on 1-800 Contacts' "1800contacts.com" domain name as a keyword on Google Ads and other search engines. By doing so, Warby Parker's conduct has the purpose and effect of deceiving and misdirecting consumers who type 1-800 Contacts' domain name into the search bar rather than the address bar of their internet browser and to divert them away from 1-800 Contacts and to Warby Parker's Deep Linked Ad Page.

**ANSWER:**  Defendant denies the allegations of paragraph 80.

31

81.     Below and attached as **Exhibit 8** is a true and correct copy of a screenshot of search results generated for an August 18, 2021 Google search for "1800contacts.com," showing a source-ambiguous Warby Parker ad that leads to the Deep Linked Ad Page as the first result:



**ANSWER:**  Defendant denies knowledge or information sufficient to form a belief as to the authenticity of the Internet search referenced in the allegations of paragraph 81, and further denies that the screenshot or **Exhibit 8** shows a "source-ambiguous Warby Parker ad."

82.     In the above screenshot (**Exhibit 8**), a Warby Parker advertisement appears as the first search result.

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to the authenticity of the Internet search referenced in the allegations of paragraph 82.

83.    By using paid keyword search advertisements for the 1 800 CONTACTS Marks to place source-ambiguous ads and by diverting consumers to a landing webpage with a confusingly similar look and feel to the 1800contacts.com website, Warby Parker is, upon information and belief, intentionally trying to deceive consumers into believing they are viewing 1-800 Contacts' official website or a website that is affiliated or associated with, sponsored by, endorsed by, or approved by 1-800 Contacts or expecting that even if some consumers are able to determine the lack of affiliation they will remain and purchase contact lenses from Warby Parker instead of 1-800 Contacts.

**ANSWER:** Defendant denies the allegations of paragraph 83. Defendant further denies that Plaintiff possesses a valid, protectable proprietary interest in the "look and feel" of its website.

84.    1-800 Contacts has been forced to spend substantial sums, by outbidding Warby Parker virtually every day, to combat the likelihood of consumer confusion and deception caused by Warby Parker's scheme in an effort to ensure that those who seek 1-800 Contacts and its website, products, and services get where they are trying to go, get what they are looking for, and are not misled.

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to Plaintiff's expenditures. To the extent the allegations of paragraph 84 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

85.    Warby Parker has recently escalated its Google Ads keyword bids on the 1 800 CONTACTS Marks, thereby substantially increasing the likelihood that its ambiguous ads and

33

landing webpage will confuse, mislead, and deceive consumers who erroneously believe that Warby Parker—a relatively unknown brand in the online contact lens marketplace that consumers may never have heard of—is an affiliate or licensee of 1-800 Contacts, the company for which they searched.

**ANSWER:** To the extent the allegations of paragraph 85 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

86. Despite its efforts to mitigate the consumer confusion Warby Parker has caused, 1-800 Contacts has not always succeeded in securing the critical top search result position for searches performed for its 1 800 CONTACTS Marks. Often, Warby Parker's ads appear before paid and natural search results that lead consumers to 1-800 Contacts and its products and services.

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to truth or falsity of the allegations of paragraph 86.

87. Moreover, even when 1-800 Contacts manages to outbid Warby Parker, the Warby Parker advertisements (connecting to its Deep Linked Ad Page) are still featured prominently, often in the second search position, attracting substantial clicks of confused or misled consumers, in violation of 1-800 Contacts' rights.

**ANSWER:** Defendant denies knowledge or information sufficient to form a belief as to whether Plaintiff outbid Defendant, or the effects of those alleged efforts. To the extent the remaining allegations of paragraph 87 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

88.     Warby Parker's persistent and prevalent use of the 1 800 CONTACTS Marks in keyword advertising to place ads and website links that are likely to confuse and mislead consumers about the source or affiliation of the advertiser has been willful and intentional and undertaken in bad faith, including, but not limited to, for the purposes of (i) confusing and deceiving 1-800 Contacts' customers and prospective customers, (ii) thwarting consumers' legitimate rights and expectations to find what they are looking for when searching for 1-800 Contacts' products and services, and (iii) forcing 1-800 Contacts to spend substantial resources bidding on search advertising keywords for its *own trademarks* in an effort to combat the confusion created by Warby Parker's overall scheme.

**ANSWER:**  To the extent the allegations of paragraph 88 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

89.     Warby Parker's use of the 1 800 CONTACTS Marks in keyword search advertising to place ads and deep linked webpage links that are likely to confuse and mislead consumers about the source or affiliation of the advertiser is intended to exploit the favorable reputation consumers associate with the 1 800 CONTACTS Marks and to confuse consumers. Indeed, there are many other methods and means for an online retailer of contact lenses, such as Warby Parker, to advertise without using the 1 800 CONTACTS Marks and without deceiving consumers regarding the source of the advertised products.

**ANSWER:**  To the extent the allegations of paragraph 89 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

90.     The totality of Warby Parker's conduct causes 1-800 Contacts substantial harm, including by (i) unfairly and deceptively confusing and diverting current and prospective 1-800 Contacts customers to Warby Parker's website, (ii) unlawfully usurping the considerable

goodwill earned by 1-800 Contacts as a result of the high quality of its services and its promotion of and investment in the 1 800 CONTACTS Marks as a source-identifier for such services, (iii) causing 1-800 Contacts to lose profits from consumers who search for 1-800 Contacts but are unfairly misdirected by Warby Parker, and (iv) imposing a significant financial burden on 1-800 Contacts by forcing it to purchase its own trademarks as keyword bids at online search engines at inflated prices to ensure that consumers searching for its products and services can find them and are not confused, misled, deceived, or unwittingly diverted to Warby Parker's website as a result of the design, purpose and effect of its conduct.

**ANSWER:** To the extent the allegations of paragraph 90 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

## COUNT I

### Lanham Act - Federal Trademark Mark Infringement, in Violation of 15 U.S.C. §1114

91.    1-800 Contacts re-alleges and incorporates the allegations of Paragraphs 1 through 90, inclusive, of this Complaint by reference into this Count as if fully set forth herein.

**ANSWER:** Defendant incorporates herein by reference its answers to the allegations contained in paragraphs 1 through 90 of the Complaint.

92.    As a result of its widespread, continuous, and exclusive use of the 1 800 CONTACTS Marks to identify its goods and services and 1-800 Contacts as their source, 1-800 Contacts owns valid and subsisting federal statutory and common law rights to the 1 800 CONTACTS Marks.

**ANSWER:** To the extent the allegations of paragraph 92 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies knowledge or information sufficient to form a belief as to the allegations.

36

93.     The 1 800 CONTACTS Marks are distinctive to both the consuming public and to 1-800 Contacts' trade.

**ANSWER:**  To the extent the allegations of paragraph 90 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies knowledge or information sufficient to form a belief as to the allegations.

94.     1-800 Contacts has expended substantial time, money, and resources on marketing, advertising, and promoting its goods and services sold under the 1 800 CONTACTS Marks.

**ANSWER:**  To the extent the allegations of paragraph 90 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies knowledge or information sufficient to form a belief as to the allegations.

95.     Warby Parker is engaged in the use in commerce of the 1 800 CONTACTS Marks, without authorization or permission, to place advertisements and links to webpages that create a likelihood of confusion about the source, sponsorship, or affiliation of Warby Parker's contact lens goods and services, based on its purchase of the 1 800 CONTACTS Marks as keywords for placement of misleading ads targeted to consumers searching for 1-800 Contacts.

**ANSWER:**  To the extent the allegations of paragraph 95 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations, with the exception that it admits that it is engaged in keyword purchases with Google and other search engines that facilitates the placement of its ads at or near the top of the Google search result pages.

96.     Warby Parker's actions are willful and done with the deliberate intent to trade on the goodwill of the 1 800 CONTACTS Marks, cause confusion and deception in the marketplace, and divert prospective sales of 1-800 Contacts' goods and services to Warby Parker.

**ANSWER:**  To the extent the allegations of paragraph 96 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

97.     Warby Parker's unauthorized use in interstate commerce of the 1 800 CONTACTS Marks as alleged herein is likely to confuse, cause mistake, or deceive consumers as to the origin, source, sponsorship, or affiliation of Warby Parker's goods and services. It is also likely to cause consumers to believe, contrary to fact, that Warby Parker's goods and services are sold, authorized, endorsed, or sponsored by 1-800 Contacts or that Warby Parker is in some way affiliated with or sponsored by 1-800 Contacts. Warby Parker's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

**ANSWER:**  To the extent the allegations of paragraph 97 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

98.     Warby Parker has used and continues to use in interstate commerce the registered 1 800 CONTACTS Marks to purchase and display ads in connection with the sale, offering for sale, distribution, and advertising of goods and services with advertisements and a landing webpage that are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Warby Parker's goods and services. This conduct constitutes infringement of 1-800 Contacts' federally registered marks, in violation of 15 U.S.C. § 1114.

**ANSWER:** To the extent the allegations of paragraph 98 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

99. Upon information and belief, Warby Parker has committed the foregoing acts of infringement with full knowledge of 1-800 Contacts' prior rights in the 1 800 CONTACTS Marks and with the willful intent to cause confusion and trade on 1-800 Contacts' goodwill.

**ANSWER:** To the extent the allegations of paragraph 99 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

100. Warby Parker's conduct is causing immediate and irreparable harm and injury to 1-800 Contacts, and to its goodwill and reputation, and will continue to both damage 1-800 Contacts and to confuse the public unless enjoined by this Court. 1-800 Contacts has no adequate remedy at law.

**ANSWER:** To the extent the allegations of paragraph 100 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

101. 1-800 Contacts is entitled to, among other relief, injunctive relief and an award of actual damages, an accounting of Warby Parker's revenue and profits from these infringements, enhanced damages, reasonable attorney fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with pre-judgment and post-judgment interest.

**ANSWER:** To the extent the allegations of paragraph 101 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

102.    Warby Parker's actions complained of in this Complaint are likely to cause, and may already have caused,1-800 Contacts damage and injury and have unjustly enriched Warby Parker. Unless enjoined by this Court, Warby Parker will continue to do the acts complained of in this Complaint and cause damage and injury, all to 1-800 Contacts' irreparable harm and to Warby Parker's unjust enrichment.

**ANSWER:**  To the extent the allegations of paragraph 102 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

## COUNT II

### Lanham Act - Federal Unfair Competition, in Violation of 15 U.S.C. § 1125(a)

103.    1-800 Contacts re-alleges and incorporates the allegations of Paragraphs 1 through 102, inclusive, of this Complaint by reference into this Count as if fully set forth herein.

**ANSWER:**  Defendant incorporates herein by reference its answers to the allegations contained in paragraphs 1 through 102 of the Complaint.

104.    1-800 Contacts' acts described in this Complaint constitute a violation of federal unfair competition law as Warby Parker has used, and continues to use (without authorization or permission), in interstate commerce words, terms, symbols, devices, names, or combinations thereof, or a false designation of origin, which are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Warby Parker with 1-800 Contacts, or as to the origin, sponsorship, approval, or endorsement of Warby Parker's goods and services by 1-800 Contacts, contrary to fact, in violation of 15 U.S.C. § 1125(a).

**ANSWER:** To the extent the allegations of paragraph 104 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

105.   Warby Parker's unauthorized use in commerce of the 1 800 CONTACTS Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

**ANSWER:** To the extent the allegations of paragraph 105 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

106.   Upon information and belief, Warby Parker's actions as alleged herein have been, and are, willful, intentional, deliberate, done with knowledge of 1-800 Contacts' rights, and are intended to, and are likely to, cause confusion, mistake, or deception as to the affiliation, connection, or association of Warby Parker with 1-800 Contacts.

**ANSWER:** To the extent the allegations of paragraph 106 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

107.   Warby Parker's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER:** To the extent the allegations of paragraph 107 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

108.   1-800 Contacts has no adequate remedy at law. Warby Parker's actions complained of in this Complaint are likely to cause, and may already have caused, damage,

41

injury, and irreparable harm to 1-800 Contacts and 1-800 Contacts' goodwill and reputation and have unjustly enriched Warby Parker. Unless enjoined by this Court, Warby Parker will continue to do the acts complained of in this Complaint, confuse the public, and cause damage and injury, all to 1-800 Contacts' irreparable harm and to Warby Parker's unjust enrichment.

**ANSWER:** To the extent the allegations of paragraph 108 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

109. 1-800 Contacts is entitled to, among other relief, injunctive relief and an award of actual damages, an accounting of Warby Parker's profits from these infringements, enhanced damages, reasonable attorney fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with pre-judgment and post-judgment interest.

**ANSWER:** To the extent the allegations of paragraph 109 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

## COUNT III

### Violation of New York Common Law - Trademark Infringement

110. 1-800 Contacts re-alleges arid incorporates the allegations of Paragraphs 1 through 109, inclusive, of this Complaint by reference into this Count as if fully set forth herein.

**ANSWER:** Defendant incorporates herein by reference its answers to the allegations contained in paragraphs 1 through 109 of the Complaint.

111. 1-800 Contacts holds valid and protectable rights in the 1 800 CONTACTS Marks.

**ANSWER:** To the extent the allegations of paragraph 111 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies knowledge or information sufficient to form a belief as to the allegations.

112. Warby Parker's unauthorized use of the 1 800 CONTACTS Marks to place misleading and confusing advertisements as described above constitutes misuse and infringement of the 1 800 CONTACTS Marks.

**ANSWER:** To the extent the allegations of paragraph 112 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

113. Warby Parker's conduct set forth above is likely to result in consumer confusion and deception.

**ANSWER:** To the extent the allegations of paragraph 113 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

114. 1-800 Contacts has suffered damages as a result of Warby Parker's conduct as described above.

**ANSWER:** To the extent the allegations of paragraph 114 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

115. Accordingly, 1-800 Contacts should be awarded its actual damages suffered, costs, and preliminary and permanent injunctive relief under New York law.

**ANSWER:**  To the extent the allegations of paragraph 115 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

## COUNT IV

### Violation of New York Common Law - Unfair Competition

116.    1-800 Contacts re-alleges and incorporates the allegations of Paragraphs 1 through 115, inclusive, of this Complaint by reference into this Count as if fully set forth herein.

**ANSWER:**  Defendant incorporates herein by reference its answers to the allegations contained in paragraphs 1 through 115 of the Complaint.

117.    Warby Parker's acts as set forth above, including, but not limited to, its trademark infringement, deceptive advertising, and unfair competition, constitute bad faith misappropriation of the labors and expenditures of 1-800 Contacts and constitute unfair competition under New York common law.

**ANSWER:**  To the extent the allegations of paragraph 117 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

118.    Accordingly, 1-800 Contacts should be awarded actual damages suffered, costs, and preliminary and permanent injunctive relief under New York law.

**ANSWER:**  To the extent the allegations of paragraph 118 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

119.    As the result of Warby Parker's willful and bad faith actions, 1-800 Contacts should be awarded punitive damages in an amount to be determined.

**ANSWER:**  To the extent the allegations of paragraph 119 are deemed to be allegations of law, Defendant is not required to plead thereto; to the extent the allegations of the said paragraph are deemed to be allegations of fact, Defendant denies the allegations.

## AFFIRMATIVE DEFENSE

By setting forth the following affirmative defense, Defendant does not assume any burden of proof as to any fact issue or other element of any cause of action that properly belongs to Plaintiff.  Defendant reserves the right to amend or supplement its affirmative defenses.

### (**Failure to State a Claim**)

The Complaint, on each of the counts set forth therein, fails to state a claim upon which relief can be granted.  Plaintiff cannot sustain its trademark infringement and unfair competition claims, as recited in Counts I-IV above, on the bare allegation that Defendant used the "1 800 CONTACTS MARKS" in connection with keyword advertising.  Courts in this jurisdiction, including the Second Circuit, have held that use of a competitor's trademarks in keyword advertising is not sufficient to support a claim of trademark infringement. Nothing alleged in or attached to the Complaint provides any plausible factual support for the confusion element of Plaintiff's unfair competition and false designation of origin claims. Plaintiff's generalized, conclusory assertions that Defendant's conduct constitutes a false designation of origin or an association with Plaintiff's mark that is likely to confuse consumers are not supported by plausible factual pleading.

Dated: October 22, 2021

By:    /s/ *L. Danielle Toaltoan*
    L. Danielle Toaltoan
    danielletoaltoan@dwt.com

    DAVIS WRIGHT TREMAINE LLP
    1251 Avenue of the Americas, 21st Floor
    New York, NY 10020
    Tel: (212) 489-8230

    *Attorney for Defendant,*
    *Jand, Inc. d/b/a Warby Parker*