# S H E A R M A N & S T E R L I N G L L P

599 Lexington Avenue
New York, NY 10022-6069
+1.212.848.4000

sfishbein@shearman.com
212.848.4424

**VIA ECF**

November 4, 2021

Hon. P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

> Re:    *1-800 Contacts, Inc. v. JAND, Inc. d/b/a Warby Parker (Case No. 1:21-cv-06966)*

Dear Judge Castel:

We represent plaintiff 1-800 Contacts, Inc. ("1-800") in the above-captioned matter. We submit this letter in response to Warby Parker's ("Warby") pre-motion letter stating its intent to file a motion for judgment on the pleadings or, in the alternative, summary judgment. ECF No. 25. 1-800 does not intend to seek leave to amend its Complaint based on Warby's letter. The next conference with this Court is on November 8, 2021 at 11:30am.

## I.    "Likelihood of Confusion" Is A Fact Issue Requiring Discovery And Is Not Amenable To Judgment As A Matter Of Law At The Pleading Stage.

Warby does not dispute that it uses 1-800's trademarks in commerce, so the only issue raised in Warby's letter is whether 1-800 has sufficiently pleaded a "likelihood of confusion." As this Court held earlier this year in a similar context, whether an alleged infringer's course of conduct—including bidding on a competitor's trademarks in search advertising auctions—creates a likelihood of confusion is a "fact intensive" inquiry that cannot be decided on the pleadings. *Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 760 (S.D.N.Y. 2021) (Castel); *accord LBF Travel, Inc. v. Fareportal, Inc.*, No. 13 Civ. 9143 (LAK) (GWG), 2014 WL 5671853, at *10 (S.D.N.Y. Nov. 5, 2014) ("it has been often stated that [l]ikelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss") (internal citations omitted).

1-800's allegations concerning likelihood of consumer confusion are more than sufficient to state a claim for trademark infringement at the pleading stage. As alleged in the Complaint, 1-800 has invested hundreds of millions of dollars building its brand for over 25 years and, because of this investment, has strong brand awareness among consumers. Compl. ¶¶ 1-2. Warby, on the other hand, is a newcomer to the on-line contact lens industry and has little brand strength among contact lens consumers. *Id.* ¶ 5. Rather than investing in its own development, Warby has

**SHEARMAN.COM**

Shearman & Sterling LLP is a limited liability partnership organized in the United States under the laws of the state of Delaware, which laws limit the personal liability of partners.

Hon. P. Kevin Castel                                              November 4, 2021

implemented a plan to piggyback on 1-800's brand and to create confusion among consumers that search for 1-800's website. *Id.*

When consumers search for "1-800 Contacts" on a search engine, such as Google, they intend to navigate to 1-800's official website and expect that the initial results and links that Google displays in response to this search will take them there. *Id.* ¶ 4. Warby's improper plan starts by subverting this expectation. Warby pays Google to display its ads within the initial results when consumers search for "1-800 Contacts." *Id.* ¶¶ 5, 8. The prominent text of the headline and ad text that Warby displays in response to searches for 1-800's trademarks does not state that the ad is from Warby or otherwise suggest that the ads are not affiliated with 1-800. *Id.* ¶ 8. Instead, the only reference to Warby is in much smaller font containing the URL for Warby's website. *Id.* ¶¶ 58, 61. Moreover, if a consumer clicks on the ad Warby displays, the consumer is taken to a "deep-linked" webpage that intentionally mimics the look and feel of 1-800's website but that is instead affiliated with Warby. *Id.* ¶¶ 9-10.

Notably, the Warby webpage that consumers are taken to after searching for 1-800's trademarks is *different* from the webpage Warby directs consumers to if they search for "Warby Parker contacts" and click on the resulting ad. In other words, Warby is using a landing page for the ads it runs in response to searches for 1-800's trademarks that is closer to the look and feel of 1-800's website than the landing page a consumer would reach if the consumer searched for "Warby Parker contacts". *Compare id.* ¶ 70 (deep linked webpage using similar layout to 1-800) *with* ¶ 75 (webpage using different layout linked to ads displayed in response to searches for "Warby Parker contacts"). The upshot of this plan is that consumers who search for 1-800's trademarks intending to go to 1-800's website are likely to be confused by Warby's ambiguous ads displayed within the initial results. *Id.* ¶ 12. Warby's use of a "deep linked" webpage mimicking the look and feel of 1-800's website amplifies this likely confusion. *Id.* ¶ 66. This conduct has damaged 1-800 in the form of lost customers and improperly inflated advertising costs.  *Id.* ¶ 12.

As this Court recognized in *Kid Car,* the sufficiency of a trademark infringement claim like 1-800's should be evaluated using the well-known *Polaroid* factors, which are fact-specific considerations including the strength of the respective marks, the proximity of the parties' products, actual confusion, the alleged infringer's good faith, consumer sophistication, and other factors. *Kid Car*, 518 F. Supp. 3d at 759. Determining likelihood of confusion requires an examination of the totality of the circumstances and is a "fact-intensive" inquiry. *Kid Car*, 518 F. Supp. 3d at 759. Indeed, all but one of the cases Warby relies on are summary judgment or post-trial decisions on a full discovery record and are not applicable here. *See, e.g.*, *Savin Corp. v. Savin Grp.*, 391 F.3d 439 (2d Cir. 2004) (summary judgment); *Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 284 (S.D.N.Y. 2018) (bench trial); *Stephen T. Greenberg, M.D., P.C. v. Perfect Body Image, LLC*, No. 17-CV-5807 (SJF)(SIL), 2019 WL 3485700, at *11 (E.D.N.Y. July 2, 2019), report and recommendation adopted, 2019 WL 3927367 (E.D.N.Y. Aug. 20, 2019) (summary judgment). The one exception, *Allied Interstate LLC v. Kimmel & Silverman P.C.*, 2013 WL 4245987, *1 (S.D.N.Y. Aug. 12, 2013), involved internet ads that explicitly disassociated defendant's law firm from plaintiff's debt collection business. *Id.* at *6. Not only did the plaintiff and defendant offer different products, the defendant identified itself in the ad text as *not affiliated* with the plaintiff (in fact, the defendant was advertising to bring legal claims against the plaintiff).

Hon. P. Kevin Castel                                                    November 4, 2021

Here, 1-800 and Warby sell the same contact lens products and Warby's ad text does nothing to dispel any affiliation with 1-800, which is only compounded by 1-800's strong brand awareness and Warby's deep-linked webpage using the same look and feel as 1-800's website.

## II.   Warby's Legal Arguments For Dismissal Are Without Merit

Warby offers a number of rationales as to why 1-800's claims should be dismissed as a matter of law at the pleading stage. None of these arguments has merit.

First, Warby asserts that the purchase of a competitor's trademarks as internet search terms "without more" is, as a matter of law, not actionable. ECF No. 25 at 2. But the Second Circuit has held—in a case not addressed in Warby's letter—that using another's trademark to trigger internet search ads *can* itself be sufficient to state a claim for trademark infringement. *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 131 (2d Cir. 2009) ("If the searcher sees a different brand name as the top entry in response to the search for 'Rescuecom,' the searcher is likely to believe mistakenly that the different name which appears is affiliated with the brand name sought in the search and will not suspect, because the fact is not adequately signaled by Google's presentation, that this is not the most relevant response to the search. Whether Google's actual practice is in fact benign or confusing is not for us to judge at this time. We consider at the 12(b)(6) stage only what is alleged in the Complaint."); *see also Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) (reversing summary judgment and ordering trial for case against Google based on keyword bidding); *LBF Travel, Inc. v. Fareportal, Inc.*, No. 13 Civ. 9143 (LAK) (GWG), 2014 WL 5671853, at *7 (S.D.N.Y. Nov. 5, 2014) (denying motion to dismiss based on allegations of keyword bidding). Further, 1-800 has alleged far more facts demonstrating likelihood of confusion than just keyword bidding. As explained above, 1-800 alleges, among other things, that Warby bids on 1-800's trademarks in search advertising auctions to take advantage of 1-800's well-known brand, Warby has limited brand awareness as a contact lens seller, Warby's ad text is ambiguous in the resulting ads, and it uses a "deep linked" webpage that mimics 1-800's website to magnify that confusion. At the pleading stage, 1-800 has stated a claim for trademark infringement. *See, Rescuecom*, 562 F.3d at 131; *Kid Car*, 518 F. Supp. 3d at 759.

Second, Warby also errs in arguing that the Second Circuit requires 1-800 to show intentional deception to state its trademark infringement claim. ECF No. 25 at 2 (citing *Savin Corp.*, 391 F.3d at 462, n.13). The *Savin* court's reference in a footnote to "intentional deception" is dicta as the Court recognized that plaintiff did not raise the issue on appeal, and the Court decided likelihood of confusion on other grounds. *Id.* Further, the authority relied upon in *Savin* says only that intent is one of several factors to be considered, not that it is a required factor. *See BigStar Ent. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 207 (S.D.N.Y. 2000). And even if intentional deception were required for an initial interest confusion claim, 1-800 has pleaded facts sufficient to show it. *See* Fed. R. Civ. P. 9(b) (allegations of intent can be averred generally). 1-800 alleges that Warby intentionally uses its mark to cause Google to display ads in a place where consumers expect to find direct links to 1-800's website. Warby's ad text is ambiguous as to affiliation. And it then links ads triggered by searches for 1-800's trademarks to a webpage that resembles 1-800's website whereas it directs consumers to a different webpage for ads triggered by searches for Warby's trademarks.

Page 3 of 5

Hon. P. Kevin Castel                                                    November 4, 2021

Third, Warby's argument that 1-800 does not have a protectible interest in the look and feel of its website or did not bring an independent trade dress claim is a red herring. ECF No. 25 at 4-5. 1-800 has not alleged in this action that the look and feel of its website constitutes trade dress infringement. Rather, 1-800 alleges that Warby's "deep linked" webpage mimics 1-800's website, which amplifies the confusion Warby has caused when displaying ads in response to searches for 1-800's trademarks. Nor does the fact that the "deep linked" webpage allegedly complies with Warby's brand guidelines or that other competitors have blue websites absolve it from 1-800's claims. What matters is whether, given Warby's conceded use of the 1-800 trademark to bring consumers to its "deep linked" webpage, the similarity of that webpage to 1-800's website would contribute to a likelihood of confusion. Here, 1-800 alleges that it has. There likewise is no requirement that every step in Warby's plan to sew confusion be a standalone claim. The test is whether, considering the *totality* of the circumstances, a likelihood of confusion exists among consumers. *Kid Car*, 518 F. Supp. 3d at 759. 1-800's Complaint easily meets that test.

Finally, Warby's passing suggestion that 1-800's efforts to protect its trademarks are "anticompetitive" deserves an equally brief response. ECF No. 25 at 5. Warby fails to address the Second Circuit's recent decision that held that 1-800's settlements of similar claims based on other competitor's use of the 1-800 marks in internet search auctions were not anticompetitive and are, indeed, pro-competitive. *1-800 Contacts, Inc. v. FTC*, 1 F.4th 102, 116 (2d Cir. 2021), *order denying petition for rehearing/rehearing en banc*, No. 18-348 (2nd Cir. Aug. 26, 2021) ("*Clorox* tells us instead to presume [settlements of trademark infringement lawsuits] are *procompetitive*.").

### III.    Warby's Request For A Discovery Stay Should Be Denied

There is no automatic stay of discovery in trademark infringement cases and no stay should be granted here. As explained above, Warby has not raised any "substantial arguments for dismissal" showing they are "likely to succeed on the merits" that might justify a discovery stay. *Kirchner v. JP Morgan Chase Bank N.A.*, No. 17 Civ. 6334 (PGG) (SLC), 2020 WL 230183, *2 (S.D.N.Y. Jan. 15, 2020); *see Ass'n Fe Y Allegria v. Republic of Ecuador*, No. 98 Civ. 8650 (BSJ), 1999 WL 147716, *1 (S.D.N.Y. Mar. 16, 1999) (denying motion to stay discovery where court was "not convinced that the defendant's motion to dismiss is likely to succeed."). Warby has not made any plausible legal arguments for dismissal at the pleading stage. Indeed, Warby's only legal argument is composed of two incorrect assertions: (1) allegations of trademark bidding in search advertising auctions "without more" do not state a trademark infringement claim; and (2) 1-800 only alleges trademark bidding. ECF No. 25 at 2. For the reasons described above, the Second Circuit has held that trademark bidding alone can sustain a claim (*Rescuecom*, 562 F.3d at 131), and the second part of Warby's argument ignores the detailed factual allegations 1-800 has made about Warby's conduct well beyond trademark bidding. *See supra* § I.

Warby's real argument is that consumers would not be confused by its conduct. ECF No. 25 at 2-4. But as this Court and many others have recognized, that is a *factual* question that requires factual development to decide. *See, e.g., Kid Car*, 518 F. Supp. 3d at 760. For that reason, discovery is essential before this case can be resolved and Warby's request for a discovery stay should therefore be denied.

Hon. P. Kevin Castel                                                                November 4, 2021

**IV.    1-800 Agrees To Warby's Briefing Schedule With Slight Modifications To Account For The Holidays**

1-800 agrees to Warby's proposed schedule for briefing of its motion for judgment on the pleadings, except insofar as it sets 1-800's deadline to oppose Warby's motion on January 3, 2022. To account for the holidays in December and January, 1-800 proposes one additional week for its response and one additional week for Warby's reply.

- Warby's deadline to file motion:  December 3, 2021

- 1-800's deadline to file response:  January 10, 2022

- Warby's deadline to file reply:  January 31, 2022

The parties have submitted a proposed discovery schedule setting other deadlines.

Respectfully submitted,

*/s/ Stephen Fishbein*

Stephen Fishbein

cc:    Counsel of record for Warby Parker (via ECF)