UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

1-800 CONTACTS, INC.,

                        Plaintiff,

                v.

JAND, INC. d/b/a WARBY PARKER, now known
as WARBY PARKER INC.,

                      Defendant.

------------------------------------------------------------- x

Case No. 21 Civ. 06966 (PKC)

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

I.     PRELIMINARY STATEMENT ................................................................................. 1

II.    BACKGROUND ......................................................................................................... 3

III.   ARGUMENT .............................................................................................................. 5

    A.     Plaintiff Has Failed to State Claims for Trademark Infringement and
          Unfair Competition. ......................................................................................... 7

          1.     The Fact That Warby Parker Engaged in Keyword Advertising
               Does Not Show Likelihood of Confusion ................................................ 10

          2.     Additional Uncontroverted Material Facts Concerning the Text of
               the Warby Parker Ad Demonstrate That There is No Likelihood of
               Confusion. .............................................................................................. 11

          3.     Facts Alleging that Warby Parker Has Imitated the "Look and
               Feel" of 1-800 Contacts' Website Without Alleging Trade Dress is
               Not Sufficient to Show Likelihood of Confusion. .................................. 13

IV.    CONCLUSION ......................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. Federal Trade Commission*,
　1 F.4th 102 (2d Cir. 2021) ............................................................................1

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
　722 F.3d 1229 (10th Cir. 2013) ................................................................1, 12

*Allied Interstate LLC v. Kimmel & Silverman P.C.*,
　No. 12 Civ. 4204 (LTS)(SN), 2013 WL 4245987 (S.D.N.Y. Aug. 12, 2013)................ *passim*

*Alzheimer's Disease and Related Disorders Association, Inc. v. Alzheimer's*
　*Foundation of America, Inc.*,
　307 F. Supp. 3d 260 (S.D.N.Y. 2018)...........................................................9

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders*
　*Ass'n, Inc.*,
　No. 10 CIV. 3314 RWS, 2015 WL 4033019 (S.D.N.Y. June 29, 2015) ...................................7

*Anderson v. Kimberly-Clark*,
　570 Fed. Appx. 927 (Fed. Cir. 2014)........................................................5, 6

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009).................................................................................6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
　493 F.3d 87 (2d Cir. 2007)......................................................................5, 6

*Bank of New York v. First Millennium, Inc.*,
　607 F.3d 905 (2d Cir. 2010)......................................................................5

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)................................................................................5

*Boost Beauty, LLC v. Woo Signatures, LLC, et al.*,
　No. 2:18-CV-02960-CAS-E, 2018 WL 6219895 (C.D. Cal. July 23, 2018).....................11, 12

*Christian Louboutin v. Yves Saint Laurent Am. Holding, Inc.*,
　696 F.3d 206 (2d Cir. 2012).....................................................................15

*CJ Products LLC v. Snuggly Plushez LLC*,
　809 F.Supp.2d 127 (E.D.N.Y. 2011) .........................................................9

*Demetriades v. Kaufmann*,
　680 F. Supp. 658 (S.D.N.Y. 1988) ...........................................................16

*EFS Mktg. v. Russ Berrie & Co.*,
  76 F.3d 487 (2d Cir. 1996) ........................................................................................16

*Gioconda L. Grp. PLLC v. Kenzie*,
  941 F. Supp. 2d 424 (S.D.N.Y. 2013) ..........................................................................5

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009) ..........................................................................................6

*ID7D Co. v. Sears Holding Corp.*,
  No. 3:11CV1054, 2012 WL 1247329 (D. Conn. Apr. 13, 2012) .............................14

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007) ..........................................................................................6

*In re Schaefer Marine, Inc.*,
  223 U.S.P.Q. 170 (T.T.A.B. 1984) .............................................................................16

*Infostream Group Inc. v. Avid Life Media Inc.*,
  No. CV 12-09315 DDP, 2013 WL 6018030 (C.D. Cal. Nov. 12, 2013) ............11, 12

*J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC*,
  Civ. No. 06-0597, 2007 WL 30115 (E.D. Pa. Jan. 4, 2007) ...............................12, 13

*Johnson v. Rowley*,
  569 F.3d 40, 43 (2d Cir. 2009) ....................................................................................5

*Kid Car NY, LLC v. Kidmoto Techs. LLC*,
  518 F.Supp.3d 740 (S.D.N.Y. 2021) (Castel, J.) ........................................................9

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011) ........................................................................................7

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
  113 F.3d 373 (2d Cir. 1997) .................................................................................13, 14

*LBF Travel, Inc. v. Fareportal, Inc.*,
  No. 13 Civ. 9143 (LAK)(GWG), 2014 WL 571853 (S.D.N.Y. Nov. 5, 2014) .......13

*Mana Products, Inc. v. Columbia Cosmetics Mfg., Inc.*,
  65 F.3d 1063 (2d Cir. 1995) ......................................................................................16

*Mulberry Thai Silks v. K & K Neckwear*,
  897 F. Supp. 789 (S.D.N.Y. 1995) ............................................................................16

*Novation Ventures, LLC v. The J.G. Wentworth Co., LLC et al.*,
  No. CV 15-00954 BRO, 2015 WL 12765467 (C.D. Cal. Sept. 21, 2015) .........11, 12

*Omicron Capital, LLC v. Omicron Capital, LLC,*
  433 F.Supp.2d 382 (S.D.N.Y. 2006)................................................................8

*Parker Waichman LLP v. Gilman L. LLP,*
  No. 12-CV-4784 JS AKT, 2013 WL 3863928 (E.D.N.Y. July 24, 2013)................14, 15

*Piazza v. Fla. Union Free Sch. Dist.,*
  777 F. Supp. 2d 669 (S.D.N.Y. 2011)..........................................................6, 7

*Rescuecom Corp. v. Google, Inc.,*
  562 F.3d 123 (2d Cir. 2009).....................................................................8

*Roth v. Jennings,*
  489 F.3d 499 (2d Cir. 2007).....................................................................6

*Savin Corp. v. The Savin Group,*
  391 F.3d 439 (2d Cir. 2004)..................................................................9, 13

*Sira v. Morton,*
  380 F.3d 57 (2d Cir. 2004)......................................................................7

*Texas Chicken & Burgers, LLC v. NYQ Prop., LLC,*
  No. 17-CV-00976 (ERK)(CLP), 2018 WL 2078481 (E.D.N.Y. Feb. 2, 2018)...............14

*Vedder Software Grp. Ltd. v. Insurance Servs. Office, Inc.,*
  545 F. App'x 30 (2d Cir. 2013) ..............................................................14

*Virgin Enters. Ltd. v. Nawab,*
  335 F.3d 141 (2d Cir. 2003)......................................................................7

*Wal–Mart Stores, Inc. v. Samara Bros., Inc.,*
  529 U.S. 205 (2000)............................................................................14

*Ziemba v. Wezner,*
  366 F.3d 161 (2d Cir. 2004)......................................................................5

**Statutes**

15 U.S.C. § 1114..................................................................................3, 7

15 U.S.C. § 1125(a) ..............................................................................3, 7

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................5

Federal Rule of Civil Procedure 12(c).......................................................1, 5, 7

**Other Authorities**

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
§ 25A:7 (5th ed. 2021) ................................................................................................................9

5C Charles Alan Wright & Arthur R. Miller, et al., *Fed. Prac. & Proc. Civ.*
§ 1367 (3d ed. 2021) ...............................................................................................................5, 6

5C Charles Alan Wright & Arthur R. Miller, et al., *Fed. Prac. & Proc. Civ.*
§ 1368 (3d ed. 2021) ................................................................................................................6

Warby Parker Inc. ("Defendant" or "Warby Parker"), by and through its attorneys, respectfully submits this memorandum of law in support of its motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP") to dismiss all claims on the grounds that 1-800 Contacts, Inc.'s ("1-800 Contacts" or "Plaintiff") pleading fails to state a claim upon which relief can be granted (the "Motion").

## I.   <u>PRELIMINARY STATEMENT</u>

The present lawsuit is a continuation of 1-800 Contacts' concerted legal campaign to dissuade its competitors from engaging in competitive "keyword" advertising—a type of advertising developed by Google and other search engines that enables advertisers to bid to place advertisements on the search engine results page—to which they are legally entitled. *See 1-800 Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1256 (10th Cir. 2013) (affirming summary judgment of infringement claims based on keyword use that did not result in ads displaying 1-800 Contacts' mark in their text); *see 1-800 Contacts, Inc. v. Federal Trade Commission,* 1 F.4th 102, 109 (2d Cir. 2021) ("between 2004 and 2013, 1-800 Contacts entered into thirteen trademark settlement agreements and one sourcing and servicing agreement with competitors . . . restricting specific terms on which the parties could "bid" when participating in [keyword] auctions held by the companies that operate search engines."). Now it is Warby Parker that is the target of Plaintiff's ire. Plaintiff pleads that in or around November 2019, Warby Parker began purchasing the 1800 CONTACTS Marks[1] as advertising keywords on Google and other search engines, which enabled its Warby Parker-branded advertisement to appear at the top of the Internet search results pages as a "sponsored ad" when customers searched for "1800 contacts."

---

[1] All capitalized terms in this Motion have the same meaning as in Plaintiff's Complaint, ECF No. 1 ("Complaint" or "Compl."), unless expressly defined herein.

1

*See* Compl. ¶ 56. This fact alone, however, does not create liability for trademark infringement and unfair competition under the Lanham Act and New York common law.

For its claims to survive, Plaintiff must plead additional facts—more than just allegations establishing Warby Parker's keyword advertising—sufficient to allege likelihood of confusion. Plaintiff has failed to do so. Of the thin additional facts that Plaintiff proffers as evidence of likelihood of confusion, perhaps its most substantial allegation is that Warby Parker's advertisement for its sales of contact lenses mimics the "recognizable and distinctive look and feel" of 1-800 Contacts' website. Compl. ¶¶ 66, 68. But tellingly, while Plaintiff cloaks this allegation in the language of trade dress infringement, Plaintiff has refused to amend its Complaint to *actually* allege that its website possesses any trade dress rights. Plaintiff's refusal amounts to a tacit acknowledgement that it cannot meet the stringent standards for pleading trade dress rights for its website. Plaintiff claims that it can have it both ways: that it can plead that consumers are confused because Warby Parker has imitated the "distinctive look and feel" of Plaintiff's website without ever alleging that the website has any trade dress which consumers have come to associate with the brand. This sort of bootstrapping contravenes case law dismissing similarly unsupported claims of trade dress infringement and should not be permitted here. In short, there can be no likelihood of confusion if consumers that view Warby Parker's website do not associate the elements of that website with the 1-800 Contacts' brand. Without this faux trade dress infringement claim, Plaintiff is left with nothing to plausibly allege likelihood of confusion in support of its trademark infringement and unfair competition claims. Accordingly, Plaintiff's Complaint should be dismissed in its entirety.

## II.   BACKGROUND

On August 18, 2021, Plaintiff filed this action against Warby Parker, alleging four counts: trademark infringement, pursuant to 15 U.S.C. §1114 and New York common law; and unfair competition, pursuant to 15 U.S.C. § 1125(a) and New York common law. The crux of Plaintiff's claims concern Warby Parker's bidding on Plaintiff's 1800 CONTACTS Marks in connection with "search advertising" or "keyword advertising"—a type of advertising developed by Google and other search engines that enables advertisers to bid to place advertisements on the search engine results page. Compl. ¶ 41. Notably, Plaintiff alleges the following facts, which are undisputed by Warby Parker:

- that since its founding in 2010, Warby Parker has sold eyeglasses, but beginning on or about November 2019, Warby Parker began selling contact lenses nationwide (Compl. ¶¶ 49, 51-52);

- that in or around November 2019, Warby Parker began purchasing the 1800 CONTACTS Marks as keywords on Google and other Internet search engines (Compl. ¶ 56);

- that when a customer conducts a search for "1800 contacts" on Google, for instance, the search result relating to Warby Parker presents the Warby Parker domain name, at the top of the search results page, where sponsored links are placed, and is labeled as an "Ad" in bold (Compl. ¶ 59 & Ex. 2); and

- that the Warby Parker advertisement landing page displays the WARBY PARKER mark at the top of the website and does not refer to 1-800 Contacts or its 1800 CONTACTS Marks in any way (Compl., Ex. 4).

Plaintiff attached to its Complaint numerous exhibits, including exhibits that show: (1) Warby Parker's advertisement is labeled as an "Ad" at the top of the "1800 contacts" search results page, segregated from the non-sponsored links (Compl., Ex. 2); (2) Warby Parker's advertisement contains the "Warby Parker" name in the URL of the advertisement link (*Id.*); and (3) the Warby Parker advertisement link directs customers to a Warby Parker-branded website (Compl., Ex. 4).

Plaintiff contends that the purchase of a competitor's trademarks for keyword advertising is sufficient to plead a claim for trademark infringement. ECF No. 27 at 3. However, to support its claim that Warby Parker's keyword advertising is likely to cause consumer confusion, Plaintiff further alleges the following facts:

- that it has invested in building strong brand awareness among customers for over 25 years (Compl. ¶¶ 1-2);

- that Warby Parker is a newcomer to the online contact lenses industry and has little brand strength among contact lenses customers (Compl. ¶¶ 5, 53);

- that the text of the Warby Parker ad "headline" does not state that the sponsored advertisement is from Warby Parker or otherwise suggest that the ads are not affiliated with 1-800 Contacts (Compl. ¶¶ 5, 8);

- that the only reference to Warby Parker in the sponsored advertisement search results is smaller font containing the URL for Warby Parker's website (Compl. ¶¶ 58, 61);

- that if a customer clicks on the Warby Parker sponsored advertisement, the customer is taken to a "deep-linked" webpage that mimics the "recognizable and distinctive look and feel that 1-800 Contacts has used at 1800contacts.com for the purposes of brand identification" (Compl. ¶ 66); and

- that the landing page for the Warby Parker sponsored advertisement is different from the Warby Parker webpage for contact lenses on its home website, and the webpage for the sponsored advertisement is "closer to the look and feel of 1-800's website." (Compl. ¶¶ 70, 75; ECF No. 27 at 2).

On October 22, 2021, Warby Parker filed its Answer to the Complaint (ECF No. 24 "Answer") and attached to it five additional exhibits providing:

- true and correct iterations of Plaintiff's website as indexed by the Internet Archives' Wayback Machine (Answer, Ex. A);

- true and correct copies of multiple third-party websites that present combinations of the design elements Plaintiff claims are distinctive to its website (Answer, Ex. B);

- a true and correct copy of Warby Parker's website for its online sale of contact lenses (Answer, Ex. C);

- a true and correct copy of Warby Parker's main website homepage  (Answer, Ex. D); and

- a true and correct excerpt from Warby Parker's branding guidelines (Answer, Ex. E).

On October 29, 2021, pursuant to this Court's Individual Practices and Procedures, Warby Parker filed a pre-motion letter seeking leave to file this Motion. ECF No. 25. Plaintiff contested the pre-motion letter, claiming, among other things, Warby Parker's claim that it had failed to plead trade dress infringement of its website was a red herring. ECF. No. 27 at 4. The Court held an initial conference with the parties on November 8, 2021, and after confirming that Plaintiff had no intention to amend the Complaint, the Court granted Warby Parker leave to bring this Motion. Minute Entry entered November 8, 2021. Accordingly, Warby Parker brings this Motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

### III.   ARGUMENT

A motion for judgment on the pleadings provides a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, and any facts of which the district court will take judicial notice. 5C Charles Alan Wright & Arthur R. Miller, et al., *Federal Practice and Procedure* § 1367 (3d ed. 2021); *Gioconda L. Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 427 (S.D.N.Y. 2013). It is decided under the same legal standard as a motion to dismiss a complaint under Rule 12(b)(6). *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004); *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010); *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009). Accordingly, to survive a motion to dismiss, a party must provide grounds upon which its claim rests through "sufficient factual matter to state a claim for relief that is plausible on its face." *Anderson v. Kimberly-Clark*, 570 Fed. Appx. 927 (Fed. Cir. 2014); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d

87, 98 (2d Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Anderson*, 570 F. App'x at 931.

In determining whether factual allegations are plausible, courts are guided by two principles. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *accord, Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009). First, that a court must accept all allegations as true ***does not apply to legal conclusions***. *Iqbal,* 556 U.S. at 678 (citation omitted). Second, any remaining factual claims must be reviewed for facial plausibility. In other words, the factual pleadings should allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

> The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''

*Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). The court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Roth v. Jennings*, 489 F.3d 499, 503 (2d Cir. 2007); *see also Iqbal*, 556 U.S. at 678. "Although inferences occasionally may be drawn from the pleadings in favor of the nonmoving party, they must be reasonable and inferences cannot be indulged in when they are contrary to the clear and unambiguous words or actions of the parties or inconsistent with matters that fall within the judicial notice doctrine." 5C Charles Alan Wright & Arthur R. Miller, et al., *Fed. Prac. & Proc. Civ.* § 1368 (3d ed. 2021); *see also Piazza v. Fla. Union Free Sch. Dist.*, 777 F. Supp. 2d 669,

678 (S.D.N.Y. 2011) (internal quotes omitted) ("[T]he Court may refuse to accept as true allegations in the Complaint that are contradicted by this record.").

In ruling on the motion to dismiss under Rule 12(c), the court can consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (*quoting Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir.2009)). "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

**A.   Plaintiff Has Failed to State Claims for Trademark Infringement and Unfair Competition.**

To plead trademark infringement and unfair competition, under both the Lanham Act and New York common law, plaintiff must allege: (1) that it has a valid mark entitled to protection, and (2) that the defendant's use of the mark is likely to cause confusion as to the origin or sponsorship of the product at issue. *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (two-prong test applicable to claims of infringement under 15 U.S.C. § 1114 and claims of unfair competition under 15 U.S.C. § 1125(a)); *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, No. 10 CIV. 3314 RWS, 2015 WL 4033019, at *5 (S.D.N.Y. June 29, 2015) (finding that the same legal test applies to claims for trademark infringement and unfair competition under the Lanham Act); *Allied Interstate LLC v. Kimmel & Silverman P.C.*, No. 12 Civ. 4204 (LTS)(SN), 2013 WL 4245987, at *5 (S.D.N.Y. Aug. 12, 2013) ("It is well-established that the elements necessary to prevail on causes of action for

trademark infringement and unfair competition under New York common law mirror the Lanham Act claims").[2]

In *Rescuecom Corp. v. Google, Inc.*, the Second Circuit established that a party's purchase of a competitor's trademark in connection with keyword advertising qualifies as use of the mark in commerce. 562 F.3d 123, 130 (2d Cir. 2009). The Second Circuit, however, also made clear that to result in liability for trademark infringement, courts must still consider whether the defendant engaged in a deceptive plan designed to deceive and cause consumer confusion through its use of the competitor's mark. *Id.* That is, the court must determine if there is the likelihood of confusion through the defendant's "use" of the competitor's trademark in keyword advertising. Otherwise, defendant's keyword advertising alone reveals nothing about whether the defendant engaged in a "deceptive plan of product placement designed to confuse customers" or a "benign practice which does not cause a likelihood of consumer confusion." *Id.* The Second Circuit's opinion did not resolve the likelihood of confusion question in the *Rescuecom* case but affirms that liability cannot be found without it:

> Needless to say, a defendant must do more than use another's mark in commerce to violate the Lanham Act. The gist of a Lanham Act violation is an unauthorized use, which 'is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, ... or as to the origin, sponsorship, or approval of ... goods [or] services.' We have no idea whether Rescuecom can prove that Google's use of Rescuecom's trademark in its AdWords program causes likelihood of confusion or mistake.

*Id.* (internal citations omitted).

---

[2] Some courts in the Second Circuit have even held that to prevail on a claim for unfair competition under New York common law, "a plaintiff must couple its evidence supporting liability under the Lanham Act with additional evidence demonstrating the defendant's bad faith." *Omicron Capital, LLC v. Omicron Capital, LLC*, 433 F.Supp.2d 382, 395 (S.D.N.Y. 2006) (internal quotes omitted). For the reasons discussed *infra*, Plaintiff cannot meet this higher burden.

Courts that have analyzed whether a party's use of a competitor's mark in keyword advertising results in likelihood of confusion almost always find no likelihood of confusion if all that defendant has done is use another's mark as a keyword to trigger an ad for defendant in which the other's trademark does not appear. 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25A:7 (5th ed. 2021); *Alzheimer's Disease and Related Disorders Association, Inc. v. Alzheimer's Foundation of America, Inc.*, 307 F. Supp. 3d 260, 284 (S.D.N.Y. 2018) ("Virtually no court has held that, on its own, a defendant's purchase of a plaintiff's mark as a keyword term is sufficient for liability."); *Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F.Supp.3d 740, 759 (S.D.N.Y. 2021) (Castel, J.). The Second Circuit has specifically recognized that even if plaintiff's potential customers are diverted by keyword advertising to defendant's competing website, the customer can quickly become aware of the competing source's actual identity and rectify the mistake. *Savin Corp. v. The Savin Group*, 391 F.3d 439, 462 n13 (2d Cir. 2004). In the context of keyword advertising, this amounts to mere diversion, and without a showing of intentional deception, is not enough to sustain trademark infringement claims. *Id.* at 462 n13. Courts have found infringement, for example, and therefore evidence of intentional deception, when the defendant changed its branding online to prominently use a mark substantially similar or identical to the plaintiff's trademark in its domain name and on its website in connection with its keyword advertising. *See CJ Products LLC v. Snuggly Plushez LLC*, 809 F.Supp.2d 127, 161 (E.D.N.Y. 2011) (finding infringement of plaintiff's PILLOW PETS mark when the defendant, "Snuggly Plushez," changed its brand online to "PillowPets.co" using Google Adwords).

Hence, while 1-800 Contacts resents that Warby Parker is competing with it online through the purchase of the 1800 CONTACTS Marks for keyword advertising, this alone is not

reason to haul Warby Parker into court. Plaintiff must plead "more" than just use of the mark in keyword advertising to satisfy likelihood of confusion—it must plead additional facts evincing Warby Parker's plan to deceive customers as to the source and origin of its goods. Plaintiff's factual allegations attempting to show Warby Parker's purported plan to deceive customers can be grouped into three buckets: (1) facts raising issue with the premise of Warby Parker's keyword advertising; (2) facts concerning the text of the Warby Parker-sponsored advertisement; and (3) facts alleging that Warby Parker has imitated the distinctive look and feel of Plaintiff's website. For the reasons discussed *infra*, none of these facts set forth a plausible case for likelihood of confusion.

### 1. The Fact That Warby Parker Engaged in Keyword Advertising Does Not Show Likelihood of Confusion.

The first bucket of facts that Plaintiff uses in support of its claims are in reality conclusory statements meant to reiterate their opposition to Warby Parker's keyword advertising. For instance, Plaintiff alleges that it has built up its brand over 25 years, and Warby Parker is a mere "newcomer" to the online sale of contact lenses. Compl. ¶¶ 1-2, 5, 52-53. Plaintiff claims that when customers search for "1-800 contacts" on a search engine such as Google, those customers intend to navigate to Plaintiff's official website and expect that the initial results and links in the Internet search results will take them there, but Warby Parker's "improper plan" subverts this expectation. *Id.* at ¶¶ 5, 8, 63-65. Plaintiff's conclusory language notwithstanding, these claims do nothing more than establish Warby Parker's purchase of the 1800 CONTACTS Marks in connection with keyword advertising, which, as discussed above, is not sufficient to plead liability under trademark infringement and unfair competition. Plaintiff may take issue with the fact that a "newcomer" to the contact lenses industry can divert customers to its own website using keyword advertising, but, without further plausible evidence of Warby Parker's

intent to deceive customers, this sort of business competition is not illegal. For these reasons,

Plaintiff's allegations do not survive scrutiny.

> ### 2.   Additional Uncontroverted Material Facts Concerning the Text of the Warby Parker Ad Demonstrate That There is No Likelihood of Confusion.

Rather than support claims of likelihood of confusion, the second bucket of Plaintiff's

facts ironically show the opposite—they reveal that there is no plausible case for likelihood of

confusion. The information incorporated by reference in Plaintiff's Complaint bears out that: (1)

Warby Parker's advertisement is labeled as an "Ad" at the top of the "1800 contacts" search

results page, segregated from the non-sponsored links (Compl., Ex. 2); (2) Warby Parker's

advertisement contains the "Warby Parker" name in the URL of the advertisement link (*Id.*); and

(3) the Warby Parker advertisement link directs customers to a Warby Parker-branded website

(Compl., Ex. 4). Courts have recognized that similar collective facts—(1) that the defendant's

advertisement is labeled as an "Ad" and segregated from the non-sponsored links, (2) that the

defendant's advertisement contains defendant's own URL in the text of the link, and (3) that

defendant's URL links directly to defendant's website—minimize any assertion of likelihood of

confusion. *See Allied Interstate LLC*, 2013 WL 4245987, at *6 (granting motion for judgment on

the pleadings in case alleging infringement based on defendant's keyword advertising);

*Infostream Group Inc. v. Avid Life Media Inc.*, No. CV 12-09315 DDP (AJWx), 2013 WL

6018030, at *3-5 (C.D. Cal. Nov. 12, 2013) (finding that the labeling and appearance of

plaintiff's advertisements could not plausibly allege likelihood of confusion and dismissing

complaint under 12(b)(6)); *Boost Beauty, LLC v. Woo Signatures, LLC, et al.*, No. 2:18-CV-

02960-CAS-E, 2018 WL 6219895 (C.D. Cal. July 23, 2018) (granting defendants' motion to

dismiss because plaintiff failed to allege that defendants used a confusingly similar mark in their

keyword advertisement); *Novation Ventures, LLC v. The J.G. Wentworth Co., LLC et al.*, No.

CV 15-00954 BRO (PJWx), 2015 WL 12765467, at *8 (C.D. Cal. Sept. 21, 2015) (granting motion to dismiss on the grounds that no reasonable factfinder could find likelihood of confusion when keyword advertisement is labeled as an "Ad"); *J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC*, Civ. No. 06-0597, 2007 WL 30115, at *7 (E.D. Pa. Jan. 4, 2007) (granting motion to dismiss given that defendant's keyword advertisement "always appear[ed] as independent and distinct links on the search result pages" and defendant's advertisements did not incorporate plaintiff's mark "in any way discernable to internet users and potential customers"); *see also 1-800 Contacts*, 722 F.3d at 1256 (affirming summary judgment "on all claims of infringement based on keyword use that did not result in ads displaying [plaintiff's] 1–800's mark in their text."). In this case, the undisputed facts bear out that even if a customer is initially diverted to the Warby Parker-branded website because of Warby Parker's keyword advertising, the customer will quickly understand that it has been directed to a Warby Parker website and act accordingly. These facts are insufficient to convert mere diversion to claims of infringement.

Plaintiff claims that likelihood of confusion may be present because the headline for the Warby Parker-sponsored advertisement does not feature the WARBY PARKER mark more prominently and fails to state that the advertisement is not affiliated with 1-800 Contacts. Compl. ¶¶ 5, 58, 61; ECF No. 27 at 2. Even though Plaintiff may wish to quibble over the text of Warby Parker's sponsored advertisement, even insisting (surprisingly) that Warby Parker should engage in competitive advertising and directly reference 1-800 Contacts in its advertisement, courts have not found these minutiae sufficient to overcome uncontroverted facts showing that the sponsored advertisement is sufficiently segregated and labeled to minimize any consumer confusion, as is the case here. Accordingly, these facts do not support a plausible case for likelihood of confusion and are entitled to dismissal. *See Allied Interstate LLC*, 2013 WL 4245987, at *6; *Infostream*

*Group Inc.*, 2013 WL 6018030, at *3-5; *Boost Beauty, LLC*, No. 2018 WL 6219895, at *5;

*Novation Ventures, LLC*, 2015 WL 12765467, at *8; *J.G. Wentworth, S.S.C. Ltd. P'ship*, 2007

WL 30115, at *7; *see also Savin Corp.*, 391 F.3d at 458 (finding that "subtle differences in font

and other characteristics" are of less significance on the Internet, "given that the overarching

concern of the individual searching the Internet is to arrive at the correct website, which is

ultimately identified by a purely text-based website address.").

>   **3.     Facts Alleging that Warby Parker Has Imitated the "Look and Feel" of 1-800 Contacts' Website Without Alleging Trade Dress is Not Sufficient to Show Likelihood of Confusion.**

The third bucket of facts that Plaintiff alleges in support of its likelihood of confusion

argument concerns Warby Parker's purported scheme to imitate Plaintiff's website. Specifically,

Plaintiff contends that the Warby Parker landing page for its sponsored advertisement is

different from Warby Parker's main website and mimics the "recognizable and distinctive look

and feel that 1-800 Contacts has used at 1800contacts.com for the purposes of brand

identification"— primarily, the use of the color blue, a rectangular shaded box that spans most

of the screen in a horizontal configuration, and a display of representative contact lenses product

packages with a discount offer. Compl. ¶¶ 66, 68. Critically, however, even though Plaintiff

parrots the language of trade dress in connection with its website—e.g., "distinctive look and

feel"—Plaintiff never alleges trade dress infringement of its website. *Compare with LBF Travel,*

*Inc. v. Fareportal, Inc.*, No. 13 Civ. 9143 (LAK)(GWG), 2014 WL 571853, at *8 (S.D.N.Y.

Nov. 5, 2014) (plaintiff alleged trade dress infringement when it also alleged that defendant

mimicked its website in connection with its advertising keywords).

Plaintiff's reluctance to plead trade dress infringement claims is because Plaintiff cannot

plausibly and in good faith plead trade dress in the 1-800 Contacts website design. The standard

to plead trade dress infringement is stringent. "[C]ourts have exercised particular 'caution' when

extending [trade dress] protection to product designs" (as opposed to its packaging). *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997). In analyzing trade dress claims, the Second Circuit has urged that "courts must not lose sight of the underlying purpose of the Lanham Act, which is protecting consumers and manufacturers from deceptive representations of affiliation and origin." *Id.* at 375.

> The Second Circuit has further explained that the trade dress 'analysis requires courts to balance the policy of protecting consumers from confusion against that in favor of free competition' and that the 'policy of protecting competition is at least as strongly implicated when ... product designs or configurations are claimed as trade dress. While trademarking a generic term would create a monopoly in a necessary word or phrase, granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves. For this reason, courts have exercised particular 'caution' when extending protection to product designs.' Therefore, trade dress protection for product design 'entails a greater risk of impinging on ideas as compared with protection of packaging or labeling.'

*ID7D Co. v. Sears Holding Corp.*, No. 3:11CV1054, 2012 WL 1247329, at *6 (D. Conn. Apr. 13, 2012) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001) (quoting *Landscape Forms*, 113 F.3d at 377, 380 (internal quotes omitted)).

To allege trade dress, Plaintiff would need to allege, among other things, (1) that the claimed trade dress is non-functional, (2) that the claimed trade dress has acquired secondary meaning,[3] and (3) the precise expression of the character and scope of the claimed trade dress. *Vedder Software Grp. Ltd. v. Insurance Servs. Office, Inc*., 545 F. App'x 30, 33 (2d Cir. 2013) (conclusory allegations that the trade dress is distinctive are insufficient to state a plausible claim for trade dress infringement); *Texas Chicken & Burgers, LLC v. NYQ Prop., LLC*, No. 17-CV-00976 (ERK)(CLP), 2018 WL 2078481, at *5-6 (E.D.N.Y. Feb. 2, 2018) (dismissal of

---

[3] The Supreme Court has held that "design, like color is not inherently distinctive." *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000). As such, Plaintiff would need to plead that the trade dress of its website has acquired secondary meaning through asserted facts relating to consumer surveys, sales success, marketing expenditures, media coverage or the length and exclusivity of its use of the dress. *See* ID7D Co., 2012 WL 1247329, at *8 (failure to plead facts to show secondary meaning, among other deficiencies in alleging trade dress in a website, results in dismissal of trade dress claim).

claims for failure to allege trade dress); *Parker Waichman LLP v. Gilman L. LLP*, No. 12-CV-4784 JS AKT, 2013 WL 3863928, at *4 (E.D.N.Y. July 24, 2013) (dismissing plaintiff's complaint for trade dress infringement of a website when it merely catalogued the website's features but makes no attempt to synthesize those elements or even remotely address the other three elements of a claim for trade dress infringement). Only once these standards are met does the Plaintiff have a claim for a protectable trademark that is source-identifying. If the alleged trade dress is neither distinctive nor generic, or is functional, there is no reason to decide the issues of likelihood of confusion. *Christian Louboutin v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 217 (2d Cir. 2012) ("[I]f (and only if) the plaintiff's trademark is 'distinctive' within the meaning of trademark law and is therefore valid and protectable, [do we] then determine whether the defendant's use of a similar mark is likely to cause consumer confusion.") (citation and internal quotation marks omitted).

Rather than subject its trade dress infringement claim to the necessary scrutiny that a proper allegation of a trade dress infringement would require, Plaintiff seeks to bootstrap some semblance of a trade dress infringement claim to its keyword advertising infringement claims—allegations concerning infringement of the 1800 CONTACTS Marks—without ever fully alleging that it has protectable trade dress in its website. This circular reasoning begs the question: how could Warby Parker's imitation of 1-800 Contacts' website, even if true, ever result in consumer confusion if Plaintiff has not properly alleged that the website is source-identifying and associated exclusively with Plaintiff in the minds of consumers with the 1-800 Contacts' brand? This Court should reject Plaintiff's attempt to have it both ways: Plaintiff should either properly allege that it has protectable trade dress in its website or this Court should

dismiss any allegation that purports to show likelihood of confusion based on Warby Parker's

alleged imitation of the 1-800 Contacts' website.[4]

---

[4] In addition, Plaintiff's threadbare allegation that it has any protectable trade dress rights in its website is false. Exhibit B to Warby Parker's Answer shows that the design aspects that Plaintiff describes as "distinctive" are hardly that. ECF No. 24-2. Multiple sellers of contact lenses use these same design elements in association with their websites. *Mana Products, Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1070-71 (2d Cir. 1995) (black standard-sized makeup compacts "defies simple logic to suggest that the packaging was inherently distinctive"; no secondary meaning was found and case dismissed on summary judgment); *EFS Mktg. v. Russ Berrie & Co.*, 76 F.3d 487, 489 (2d Cir. 1996) ("troll" doll design cannot be inherently distinctive or have acquired secondary meaning because at least twenty other companies sell similar designs); *Mulberry Thai Silks v. K & K Neckwear*, 897 F. Supp. 789, 796 (S.D.N.Y. 1995) (the use of geometric designs in bright colors "is common in neckties" and is neither inherently distinctive nor has acquired secondary meaning). Moreover, by Plaintiff's own admission, the current "distinctive" design of its website only dates to April 2020, which is confirmed by archival images of Plaintiff's website showing that the website's "look and feel" has undergone significant changes over the years. *See* Compl. ¶ 68; Answer, Ex. A. These facts undermine any claim Plaintiff could assert that consumers associate its website with its brand in support of its claim of likelihood of confusion. *In re Schaefer Marine, Inc.*, 223 U.S.P.Q. 170, 175 (T.T.A.B. 1984) (application for trademark registration of 23 variations of a design configuration "seriously detracts" from the claim of trademark significance in any one of the design variations); *Demetriades v. Kaufmann*, 680 F. Supp. 658, 666-667 (S.D.N.Y. 1988) (no consistent design precludes secondary meaning).

## IV.     CONCLUSION

For the foregoing reasons, this Court should reject Plaintiff's Complaint for failure to plausibly allege likelihood of confusion. Without any facts to support its trademark infringement and unfair competition claims, Warby Parker respectfully requests that the Court grant its Motion for judgment on the pleadings.

Dated: December 3, 2021

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

_____/s/ L. Danielle Toaltoan_____

L. Danielle Toaltoan
1251 Avenue of the Americas
21st Floor
New York, NY 10020
Tel: (212) 489-8230
danielletoaltoan@dwt.com
*Attorney for Defendant JAND, Inc. d/b/a*
*Warby Parker, now known as Warby Parker*
*Inc.*