UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

1-800 CONTACTS, INC.,

                    Plaintiff,

              v.

WARBY PARKER, INC.,

                  Defendant.

: Case No. 21 Civ. 06966 (PKC)

---------------------------------------------------------------------- x

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................................II

I.      PRELIMINARY STATEMENT ................................................................................... 1

II.     ARGUMENT ................................................................................................................ 2

      A.      1-800 Contacts Must Plead More Than Warby Parker's Bidding on 1-800
           Contacts as a Keyword to Show Likelihood of Confusion. ....................................2

      B.      Requiring Plausible Allegations for Likelihood of Confusion is not a
           Heightened Standard, but the Proper Application of *Polaroid* Factors to
           Internet Cases. ........................................................................................................3

           a.      The *Polaroid* Factors are Nonexhaustive .....................................................4

           b.      The Weight of any Given *Polaroid* Factor may Outweigh all the
                 Other Factors ...............................................................................................5

           c.      The *Polaroid* Factors Should be Applied Flexibly .....................................6

III.    CONCLUSION ........................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
  722 F.3d 1229 (10th Cir. 2013) ...................................................................................6, 7, 8

*Ahmed v. GEO USA LLC*,
  No. 14cv7486, 2015 WL 1408895 (S.D.N.Y. Mar. 27, 2015) ...............................................3, 6

*Allied Interstate LLC v. Kimmel & Silverman P.C.*,
  No. 12 Civ. 4204 (LTS)(SN), 2013 WL 4245987 (S.D.N.Y. Aug. 12, 2013).............................5

*Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of
  Am., Inc.*,
  307 F. Supp. 3d 260 (S.D.N.Y. 2018)...................................................................................4, 5, 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................................3

*Boost Beauty LLC v. Woo Signatures, LLC*,
  No. 2:18-CV-02960-CAS-E, 2018 WL 6219895 (C.D. Cal July 23, 2018).............................6

*Boost Beauty, LLV v. Woo Signatures, LLC*,
  No. 18cv2960 (C.D. Cal. Nov. 13, 2018) ................................................................................6

*Caraway Home, Inc. v. Pattern Brands, Inc.*,
  No. 20cv10469, 2021 WL 1226156 (S.D.N.Y. Apr. 1, 2021): (i) ............................................9

*Hearts on Fire Co., LLC v. Blue Nile, Inc.*,
  603 F.Supp.2d 274 (D. Mass. 2009) ....................................................................................4, 9

*Infostream Group, Inc. v. Avid Life Media Inc.*,
  No. CV 12-09315 DDP, 2013 WL 6018030 (C.D. Cal. Nov. 12, 2013)............................4, 5, 6

*J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding*,
  No. 06-0597, 2007 WL 30115 (E.D. Pa. Jan. 4, 2007)............................................................6

*Kellogg Co. v. Pack'em Enters., Inc.*,
  951 F.2d 330 (Fed.Cir.1991)....................................................................................................4

*Kid Car NY, LLC v. Kidmoto Techs. LLC*,
  518 F. Supp. 3d 740 (S.D.N.Y. 2021).......................................................................................4

*Maternally Yours, Inc. v. Your Maternity Shop, Inc.*,
  234 F.2d 538 (2d Cir. 1956)..................................................................................9

*Nabisco, Inc. v. Warner–Lambert Co.*,
  220 F.3d 43 (2d Cir.2000).....................................................................................4

*Network Automation v. Advanced Sys. Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011) ................................................................4, 5, 7, 10

*New England Mercantile Grp., LLC v. Barnell*,
  No. X03HHDCV146069683S, 2019 WL 2307446 (Conn. Super. Ct. Apr. 2,
  2019) .................................................................................................................7, 8

*Novation Ventures, LLC v. J.G. Wentworth Co., LLC*,
  No. 15cv00954, 2015 WL 12765467 (C.D. Cal. Sept. 21, 2015).............................6

*Polaroid Corp. v. Polarad Elecs. Corp.*,
  287 F.2d 492 (2d Cir. 1961)........................................................................ *passim*

*Public Free Will Corp. v. Verizon Comm'n Inc.*,
  No. 15cv6354, 2017 WL 1047330 (E.D.N.Y. Mar. 17, 2017) ................................3

*Rescuecom Corp v. Google Inc.*,
  562 F.3d 123 (2d Cir. 2009)............................................................................1, 2, 6

*Savin Corp. v. Savin Grp.*,
  391 F.3d 439 (2d Cir. 2004)............................................................................2, 3, 5

*Star Indus. v. Bacardi & Co., Ltd.*,
  412 F.3d 373 (2nd Cir. 2005)............................................................................8, 9

**Other Authorities**

Megan Graham and Jennifer, *How Google's $150 billion advertising business
  works*, CNBC (Oct. 13, 2021 12:52 pm EDT),
  https://www.cnbc.com/2021/05/18/how-does-google-make-money-
  advertising-business-breakdown-.html ..................................................................1

David J. Franklyn and David A. Hyman, *Trademarks as Search Engine Ketwords:
  Much Ado About Something?* 26 Harv. J.L. & Tech. 481, 532 (2013)....................8

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §
  25A:8 (5th ed. 2021) ...........................................................................................8

Tripp Mickle, *Google Nearly Doubles Profit Behind Red-Hot Ad Market*, Wall
  Street Journal (Oct. 26, 2021 5:51 pm EST)
  https://www.wsj.com/articles/google-alphabet-googl-q3-earnings-report-2021-
  11635212409.........................................................................................................1

Kylie Moore, *Google Advertising*, Digital Third Coast
(https://www.digitalthirdcoast.com/blog/google-ads-statistics.(last visited Jan.
28, 2022) .............................................................................................................................1

Wikipedia, *Key Word Advertising*,
https://en.wikipedia.org/wiki/Keyword_advertising..............................................................1

## I.    PRELIMINARY STATEMENT[1]

1-800 Contacts' brief in opposition ("Opp. Br." or "Opposition Brief") to Warby Parker's Motion rests on the outdated notion that bidding on a competitor's mark for the purposes of keyword advertising is nefarious and misleading. 1-800 Contacts' presumption ignores not only recent case law, which has evolved to account for emerging technology, but also the reality that keyword advertising is the major source of search engine revenue, and bidding on brand names is commonplace. Google Ads, which is the most well-known keyword advertising service,[2] is Alphabet Inc.'s[3] highest source of revenue.[4] More than 80% of Alphabet's revenue comes from Google Ads, which generated $147 billion in revenue in 2020.[5] In the third quarter of 2021, that revenue grew by over 43%.[6] While the exact statistics are not publicly shared, it is reported that there are more than 7,000,000 advertisers using Google Ads.[7] Warby Parker is thus one of millions of businesses that use keyword advertising to compete for consumers. As discussed below, there is nothing inherently unlawful or even inappropriate about using keyword advertising, and courts have increasingly recognized this as online advertising has exponentially grown.

Given 1-800 Contacts' anachronistic view of keyword advertising, it comes as no surprise that 1-800 Contacts ignores years of well-reasoned court opinions and: (i) wrongly insists that post-*Rescuecom Corp v. Google Inc.*, 562 F.3d 123 (2d Cir. 2009), every case that alleges bidding on

---

[1] All capitalized terms in this Motion have the same meaning as in Plaintiff's Complaint, ECF No. 1 ("Complaint" or "Compl."), unless expressly defined herein.

[2] Wikipedia, *Key Word Advertising*, https://en.wikipedia.org/wiki/Keyword_advertising (as of Nov. 3, 2020, 15:38 UTC).

[3] Alphabet is a holding company for Google.

[4] Megan Graham and Jennifer, *How Google's $150 billion advertising business works*, CNBC (Oct. 13, 2021 12:52 pm EDT), https://www.cnbc.com/2021/05/18/how-does-google-make-money-advertising-business-breakdown-.html.

[5] *Id.*

[6] Tripp Mickle, *Google Nearly Doubles Profit Behind Red-Hot Ad Market*, Wall Street Journal (Oct. 26, 2021 5:51 pm EST), https://www.wsj.com/articles/google-alphabet-googl-q3-earnings-report-2021-11635212409.

[7] Kylie Moore, *Google Advertising*, Digital Third Coast (https://www.digitalthirdcoast.com/blog/google-ads-statistics.(last visited Jan. 28, 2022). Even assuming "[o]nly about six percent of search engine keyword purchases for trademarks are by competitors of the trademark owner" (Opp. Br., 6 n.3), the actual numbers are significant by any measurement. Moreover, given the growth in this space, an article from 2014 is surely outdated for this type of information.

keywords somehow presents the "magic words" to compel a court to permit expensive and prolonged discovery even if the pleadings fail to plausibly allege facts showing a likelihood of confusion; and (ii) falsely cries "heightened pleading standard" rather than acknowledge that legal precedent does not always require a mechanistic and rigid application of the *Polaroid* factors[8] and that certain evidence may be considered particularly relevant to determine likelihood of confusion involving keywords advertising.

## II.    <u>ARGUMENT</u>

### A.  1-800 Contacts Must Plead More Than Warby Parker's Bidding on 1-800 Contacts as a Keyword to Show Likelihood of Confusion.

1-800 Contacts' insistence that the *Rescuecom* holding—bidding on a competitor's keyword constitutes use for purposes of the Lanham Act—will equally support the plausible standard for allegations of likelihood of confusion is a fundamental misreading of the case and its progeny. Rather, as discussed in detail in Warby Parker's memorandum of law in support of judgment on the pleadings ("Br."),[9] "[i] t is not by reason of absence of a use of a mark in commerce" that an otherwise benign practice such as keyword advertising escapes liability; "it escapes liability because it is a benign practice which does not cause a likelihood of consumer confusion." *Rescuecom* at 130. In other words, a defendant must do more than allege use of another's mark in commerce to violate the Lanham Act. A defendant must also plausibly allege that such use will cause a probable, not just possible, likelihood of confusion. This is because "[t]he gist of a Lanham Act violation is an unauthorized use, which 'is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, ... or as to the origin, sponsorship, or approval of ... goods [or] services.'" *Id.* (citation omitted); *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 461 (2d Cir. 2004) ("the relevant inquiry is not whether daily users, or, even more amorphously, 'individuals ... com[ing] into contact' with a

---

[8] *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir. 1961).
[9] Br. at 8-11.

Plaintiff's products, would likely confuse them with those of the defendants. Rather, the pertinent question is whether 'numerous ordinary prudent *purchasers*,' would likely 'be misled or confused as to the source of the product in question because of the entrance in the marketplace of [Defendants'] mark.'") (citation omitted) (alteration and emphasis in the original). In the keyword advertising context, courts have routinely considered uncontested facts raised in the parties' pleadings to determine whether, looking at the action in its totality, plaintiffs have pleaded a *plausible* (not merely possible) case for trademark infringement sufficient to withstand dismissal.[10]

Taking 1-800 Contacts' interpretation of *Rescuecom* and its progeny to its logical conclusion means that the claim that a party bid on a competitor's keywords would automatically trigger a "fact-intensive" *Polaroid*[11] review at trial or summary judgment and would not only subvert the motion to dismiss standard but also ignore the discretion of the court to resolve cases where no reasonable factfinder could find confusion. This outcome would be in violation of common sense and established caselaw. Rather, in accordance with *Iqbal*[12] and *Twombly*,[13] "a plaintiff is still required to allege facts regarding likelihood of confusion that would state a claim to relief that is plausible on its face." *Public Free Will Corp. v. Verizon Comm'n Inc.*, No. 15cv6354, 2017 WL 1047330, at *4 (E.D.N.Y. Mar. 17, 2017) and "broad statements—devoid of any factual detail—are plainly insufficient as a matter of law." *Ahmed v. GEO USA LLC,* No. 14cv7486, 2015 WL 1408895, at *3 (S.D.N.Y. Mar. 27, 2015).

**B. Requiring Plausible Allegations for Likelihood of Confusion is not a Heightened Standard, but the Proper Application of *Polaroid* Factors to Internet Cases.**

In determining the proper inquiry for keyword advertising trademark infringement claims, it is necessary to adhere to three long-stated principles: (i) the *Polaroid* factors are non-exhaustive, (2) the *Polaroid* factors should be applied flexibly, and (3) the weight of any given factor may dominate or

---

[10] *See* discussion at pp. 4-5, *infra.*
[11] *Polaroid*, 287 F.2d at 495.
[12] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[13] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

outweigh all the other factors.[14] These principles are critical to support the requirement that trademark infringement determine likelihood of confusion,[15] and to prevent the subversion of the *Polaroid* factors for anti-competitive purposes.

### a.  The *Polaroid* Factors are Nonexhaustive

In evaluating claims of trademark infringement in cases involving keyword advertising, courts have found particularly important one factor that is outside of the traditional test: "the labeling and appearance of the advertisements and the surrounding context on the screen displaying the results page." *Network Automation, Inc.*, 638 F.3d at 1154. The *Polaroid* factors were developed pre-Internet for a different problem—*i.e.*, for analyzing whether two competing brands' *marks* are sufficiently similar to cause consumer confusion. In keyword advertising cases, the crux of consumer confusion is the look of the Ad itself and the design of the linked web page. *See Hearts on Fire Co., LLC v. Blue Nile, Inc.*, 603 F.Supp.2d 274, 289 (D. Mass. 2009) ("[T]he likelihood of confusion will ultimately turn on what the consumer saw on the screen and reasonably believed, given the context."); *Alzheimer's*, 307 F. Supp. 3d at 291 ("When examining the similarity of the marks in the [advertising keyword] context, the court must consider the degree of similarity between plaintiff's [ ]mark and the [defendant's] advertisements appearing on the search-results page.") (internal quotes omitted); *Infostream Group, Inc. v. Avid Life Media Inc.*, No. CV 12-09315 DDP (AJWx), 2013 WL 6018030,

---

[14] While each circuit has created its own list of factors, the underlying principles that the factors are non-exhaustive, should be applied flexibly, and the weight of one or two factors may outweigh others are universal. *See e.g. Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 758–59 (S.D.N.Y. 2021) ("The application of the *Polaroid* test is 'not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused.' The *Polaroid* test 'is a fact-intensive inquiry that depends greatly on the particulars of each case'. . . 'when applying the *Polaroid* factors to determine likelihood of confusion at a motion to dismiss stage, courts have not required all factors to be addressed in order to find adequate pleading of a likelihood of confusion.'" (internal citations omitted); *Network Automation v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145-46 (9th Cir. 2011) ("[w]e must be acutely aware of excessive rigidity when applying the law in the Internet context; emerging technologies require a flexible approach."); *Nabisco, Inc. v. Warner–Lambert Co.,* 220 F.3d 43, 48 (2d Cir.2000) (dissimilarity of the marks outweighed all other factors); *Kellogg Co. v. Pack'em Enters., Inc.*, 951 F.2d 330, 333 (Fed.Cir.1991) ("We know of no reason why, in a particular case, a single [ ] factor may not be dispositive.").

[15]*See Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 287 (S.D.N.Y. 2018) ("[t] he *sine qua non* of trademark infringement is consumer confusion caused by the infringing behavior").

4

at \*4 (C.D. Cal. Nov. 12, 2013) ("The court has specifically recognized that emerging technologies, particularly the Internet, require a flexible approach to the inquiry into likelihood of confusion.").

1-800 Contacts does not allege that Warby Parker's *marks* are similar to its trademarks. Rather, 1-800 Contacts alleges that when consumers enter "1-800contacts" into a search engine (primarily Google), Warby Parker's ad may appear, along with other competing brands' ads (including 1-800 Contacts), and clicking on the ad will take the consumer to a Warby Parker-branded web page, the design of which causes initial interest confusion. Because the ultimate test for determining likelihood of confusion is whether a "reasonably prudent consumer" in the marketplace is likely to be confused as to the origin of the goods, the plausibility of 1-800 Contacts' allegations can be resolved simply by evaluating the Ad and the web page at issue. *See Network Automation*, 638 F.3d at 1153-54 (finding that clear labeling of an advertisement might eliminate any possibility of consumer confusion).

Moreover, because a user diverted to the wrong website can easily get back on track, the Second Circuit has also reasoned that a plaintiff must prove intentional deception to prevail in an initial interest confusion case in the internet context.[16] *Savin Corp.*, 391 F.3d at 462 n.13; *see also Alzheimer's Disease*, 307 F. Supp. 3d at 287 ("behavior meant to harm a competitor does not necessarily entail infringement if a consumer is unlikely to be confused. For this reason, courts have repeatedly found that the purchase of a competitor's marks as keywords alone, without additional behavior that confuses consumers, is not actionable.").

### b. The Weight of any Given *Polaroid* Factor may Outweigh all the Other Factors

A court in this district granted defendant's motion for judgment on the pleadings based solely on review of exemplars of defendants' advertising and internet search results. *Allied Interstate LLC v.*

---

[16] *See* detailed discussion at 8-10 of Br.

*Kimmel & Silverman P.C.*, No. 12 Civ. 4204 (LTS)(SN), 2013 WL 4245987, at *6 (S.D.N.Y. Aug. 12, 2013). Other courts have dismissed on similar grounds: (i) "'the labeling and appearance of the advertisements and the surrounding context on the screen displaying the search results' is one of the 'most relevant factors' to the likelihood of confusion analysis in an advertising keywords case;"[17] (ii) plaintiff failed to allege "that defendants *impermissibly* used plaintiff's Mark, which is BoostLash, in its advertisement;"[18] and (iii) no reasonable factfinder could find that defendants' advertisements were likely to cause confusion when defendants' advertisements did not incorporate plaintiffs' marks in any discernable way in its external advertising and its advertisements appeared as independent and distinct links on the search result pages.[19] While the courts in these cases considered elements of the *Polaroid* factors to determine the plausibility of defendants' trademark infringement claims, the courts did not engage in a bean-counting exercise where the party with the most factors wins.

### c.   The *Polaroid* Factors Should be Applied Flexibly

Courts increasingly recognize that the application of the traditional multi-factor test is inapplicable to infringement claims reliant on the purchase of keywords to drive search results. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1243 (10th Cir. 2013) (quoting *Rosetta Stone Ltd. v.*

---

[17] *Infostream*, 2013 WL 6018030, at *4 (quoting *Network Automation*, 638 F.3d at 1154). 1-800 Contacts seeks to distinguish *Infostream Group Inc.* in part because the "ads were segregated by being displayed 'to the right of the search term result,' whereas 1-800 Contacts alleges that Warby's ads appear at or near the top of the search results…" Opp. Br. at 20 (quoting *Infostream*, 2013 WL 6018030, at *12). But courts have not differentiated this format difference for purposes of likelihood of confusion when the defendant's advertisement is labeled as an "Ad," as is the case here. *See Rescuecom*, 562 F.3d at 126 (acknowledging in 2009 that "Google displays these advertisements on the search result page either in the right margin or in a horizontal band immediately above the column, of relevance-based search results."); *Novation Ventures, LLC v. J.G. Wentworth Co., LLC*, No. 15cv00954, 2015 WL 12765467, at *8 (C.D. Cal. Sept. 21, 2015) (defendant's advertisement would not cause confusion because the advertisements are labeled as "Ad" in the search results).

[18] *Boost Beauty LLC v. Woo Signatures, LLC*, No. 2:18-CV-02960-CAS-E, 2018 WL 6219895, at *5 (C.D. Cal July 23, 2018) (emphasis added). Despite 1-800 Contacts' claim that the court dismissed the case because defendant purchased "boost" and "lash" as AdWords as opposed to the trademark, "BoostLash," the court also dismissed the case in part because of plaintiff's failure to allege use of BoostLash or other confusingly similar trademark in its consumer-facing advertisement on the Internet, as was the case in *Infostream Goup Inc.* 2018 WL 6219895, at *5. In Boost Beauty's Third Amended Complaint (which is now the operative complaint in that action), the plaintiff alleged that defendant purchased "boost" and "lash" as Adwords and used the confusingly similar trademark "WooLash" in the text of the resulting Google Ad. *Boost Beauty, LLV v. Woo Signatures, LLC*, No. 18cv2960 (C.D. Cal. Nov. 13, 2018) (ECF No. 32).

[19] *Novation Ventures,* 2015 WL 12765467, at *8; J*.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding*, No. 06-0597, 2007 WL 30115, at *7 (E.D. Pa. Jan. 4, 2007).

*Google, Inc.*, 676 F.3d 144, 153–154 (4th Cir. 2012) ("in some contexts the application of the traditional multi-factor test is difficult because often many of the factors are either unworkable or not suited or helpful as indicators of confusion" (internal quotation marks omitted), *aff'g in part and rev'd in part*, 755 F. Supp. 2d 1151 (D.C. Utah 2010)); *Network Automation*, 638 F.3d at 1154 (finding the district court erred in relying on similarity between the marks, similarity between the goods and similarity in marketing channels, which fails to discern whether there is a likelihood of confusion in a keywords case).

Merely parroting an oft-stated phrase that may be true in a traditional trademark infringement case—as 1-800 Contacts does here—that the first three factors, strength of the plaintiff's marks, similarity between the marks used, and the proximity of the products in the marketplace are the most important, does not support a case for plausible allegations in a keyword advertising case.[20]

To begin with, in keyword advertising cases, similarity of the marks and similarity and/or proximity of the products in the marketplace will always be true, ensuring these factors weigh against the defendant, even as they do not indicate probable likelihood of consumer confusion. Rigidly applying the Polaroid facts is in tension with well-reasoned law, including by courts here in the Second Circuit, which hold the purchase of a competitor's trademark as a keyword for search-engine advertising, without more, is not sufficient for a claim of trademark infringement. *Alzheimer's Disease*, 307 F. Supp. 3d at 287 (use of a plaintiff's mark as an AdWord is diversion not confusion); *see also Network Automation*, 638 F.3d at 1154 (finding the district court erred in relying on similarity of marks, goods and trade channels because those factors "fail[] to discern whether there is a likelihood of confusion in a keywords case"); *1–800 Contacts,* 722 F.3d at 1245 ("the similarity of the search term and 1–800's mark is of minor relevance…. [An] inference [that a trademark owner is the source of another webpage] is an unnatural one when the entry is clearly labeled as an advertisement

---

[20] Opp. Br. at 12.

and clearly identifies the source, which has a name quite different from the business being searched for"); *New England Mercantile Grp., LLC v. Barnell*, No. X03HHDCV146069683S, 2019 WL 2307446, at *8 (Conn. Super. Ct. Apr. 2, 2019) (rejects argument that the marks are identical when the plaintiff does not claim that the defendant is using its mark or a similar mark in a consumer-facing manner).

The *Polaroid* factor that goes to strength of 1-800 Contacts is equally irrelevant on the facts here. 1-800 Contacts does not allege that Warby Parker is using its trademark in a consumer-facing manner. Quite the opposite, 1-800 Contacts alleges only that Warby Parker uses its own trademarks, which carry their own "reputation."[21] While this factor may be relevant if there were allegations as to use of 1-800 Contacts in a visible manner, that is not the case here.[22]

The *Polaroid* bad faith factor as alleged by 1-800 Contacts, similarly, does not bolster the plausibility of its trademark infringement claims. To allege bad faith, 1-800 Contacts relies on Warby Parker's admission in its Answer that it uses the 1-800 CONTACTS Marks to "promote" and "facilitate the sale of contact lenses."[23] While 1-800 Contacts may feel that its competitors are unfairly taking a free ride on its trademarks by buying keywords, "liability for trademark infringement has never turned on 'free riding' *per se*: the test has always been whether there is a likelihood of confusion. 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25A:8 (5th ed. 2021). Even where a defendant knows of the earlier mark, the Second Circuit has found the

---

[21] Compl. at ¶ 49.

[22] While some courts have factored in the strength of the mark, reasoning that a consumer searching for a generic or descriptive term is more likely to be searching for a product category whereas a user searching for a distinctive term is more likely to be looking for a particular product, applying that factor here does not help 1-800 Contacts. As has been determined by another court, "1800 Contacts" is a weak mark in a keyword advertising case because the "nature of how third parties use generic and descriptive words on search engines" suggest that users who enter the term were likely searching for a type of product. *1–800 Contacts, Inc.*, 755 F. Supp. 2d at 1179. To be confused or even "diverted" from one web destination to another, the searcher must have a specific destination in mind. As the Franklyn and Hyman article, *Trademarks as Search Engine Keywords: Much Ado About Something?*, points out: "consumers actually have quite heterogeneous goals and expectations. Most ads are unlikely to give rise to confusion as to source. Click-through rates are often low, and consumers can readily click back if they do not find what they want. Given all these factors, the actual probability of harmful diversion appears to be relatively modest." 26 Harv. J.L. & Tech. 481, 532 (2013).

[23] Opp. Br. at 14-15.

defendant to be acting in good faith "in the absence of additional evidence indicating an intent to promote confusion or exploit goodwill or reputation." *Star Indus. v. Bacardi & Co., Ltd.*, 412 F.3d 373, 388 (2nd Cir. 2005). As discussed above and in the Motion, the Second Circuit holds that in internet initial interest cases, intentional deception is required.[24] Even if intentional deception were not required as 1-800 Contacts argues, 1-800 Contacts has failed to plausibly allege bad faith. Just as 1-800 Contacts cannot use the lawful act of keyword bidding to support a claim for trademark infringement; it also cannot subvert Warby Parker's link to its own website[25] that prominently bears its WARBY PARKER trademark into something sinister.[26]

1-800 Contacts does not allege actual confusion, but only "facts from which the most reasonable inference is that Warby Parker's plan—by its very intent and design—causes actual

---

[24] *See* Br. at 8-10 for a detailed discussion.

[25] Given 1-800 Contacts refusal to own a trade dress claim for its website, 1-800 Contacts' allegations of "distinctive look and feel" lack sufficient factual matter to state a claim for relief that is plausible on its face. Compl., ¶¶ 66, 68, It defies common sense to believe that there is a probability (not just a possibility) that consumers will be confused where the parties' own trademarks are prominently located at the top of the website, there is no allegation that the WARBY PARKER mark infringes, and multiple other third party websites use a blue color scheme, show third-party branded product being sold and price discounts. Answer, Ex. B [ECF NO. 24-2].

[26] Opp Br. 22-23. The cases on which 1-800 Contacts rely are readily distinguishable. *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 543 (2d Cir. 1956) is a case that was decided fifty years before the use of keyword advertisement (40 years before the Internet became available to the public) and involves a traditional analysis of the *Polaroid* factors, which is not applicable here. *Hearts on Fire* is inapposite on the facts. In *Hearts on Fire*, the parties are not competitors as are the parties here. The plaintiff is a wholesaler of diamonds and defendant is an internet diamond retailer. The court found that a consumer who had just entered a search for Hearts on Fire diamonds might easily believe that the Defendant was an authorized retailer when presented with Blue Nile's sponsored link. Moreover, a search internally on defendant's website using plaintiff's trademark generated a list of diamond products not clearly labeled otherwise. 603 F. Supp. 2d at 278. In other words, the additional facts, not found here, could constitute intentional deception. There are multiple differences between the facts here and in *Caraway Home, Inc. v. Pattern Brands, Inc.*, No. 20cv10469, 2021 WL 1226156 (S.D.N.Y. Apr. 1, 2021): (i) the linked ads were not part of the complaint and therefore could not be viewed by the court; (ii) the plaintiff in *Caraway* alleged that "third parties have considered the Caraway Pans and Equal Parts cookware to be 'almost identical'"; (iii) the defendant acknowledged its original products were a failure, admitted the praise plaintiff received for its unique design and colors, and the relaunch of its products with a new aesthetic; (iv) trade dress was alleged and while dismissed for certain deficiencies, the court allowed plaintiff to replead trade dress. *Id.* *10. Moreover, unlike in *Caraway*, the products here are manufactured by third parties and both parties (unlike in *Hearts of Fire*) are retailers. Consumers are accustomed to the same contact lens brands being sold by multiple third-party e-tailers (*see* Answer , Ex. B [ECF NO. 24-2]) and thus are not looking to the goods to differentiate the brands, but the price and the e-tailer's trademarks. In *Caraway*, detailed allegations showed that the products themselves were the selling point. Those allegations cannot be made here, where Warby Parker has a long-held and known brand, and the linked webpage is clearly and prominently labeled.

9

confusion."[27] As discussed above, 1-800 Contacts' use of rhetorical hyperbole is not sufficient to support a plausible case for trademark infringement. This kind of exaggeration only serves to mask and confuse the true legal issues involved.

Finally, 1-800 Contacts argues that any dispute about consumer sophistication is a factual one that should survive a motion to dismiss. Based on the clear labelling of both Warby Parker's Ad and its linked webpage as WARBY PARKER, the Court does not have to reach this factor. However, Courts have acknowledged as a matter of common sense and law that "the default degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace." *Network Automation*, 638 F.3d at 1152.

> [I]n the age of FIOS, cable modems, DSL and T1 lines, reasonable, prudent and experienced internet consumers are accustomed to such exploration by trial and error. They skip from site to site, ready to hit the back button whenever they're not satisfied with a site's contents. They fully expect to find some sites that aren't what they imagine based on a glance at the domain name or search engine summary… consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page—if then.

*Id.* at 1152-53 (quoting *Toyota Motor Sales v. Tabari*, 610 F.3d 1171, 1179 (9th Cir. 2010). This finding is in line with empirical evidence.[28]

As discussed in detail in Warby Parker's Motion, rather than support plausible allegations of likelihood of confusion, the facts alleged here show the opposite. *See* Br. at 11-13.

### III.    CONCLUSION

For the foregoing reasons, this Court should reject Plaintiff's Complaint for failure to plausibly allege likelihood of confusion. Without any facts to support its trademark infringement and unfair competition claims, Warby Parker respectfully requests that the Court grant its Motion for judgment on the pleadings.

---

[27] Opp. Br. at 16.
[28] *See* fn. 22, *supra.*

Dated: January 31, 2022

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

*/s/ L. Danielle Toaltoan*

L. Danielle Toaltoan
1251 Avenue of the Americas
21st Floor
New York, NY 10020
Tel: (212) 489-8230
danielletoaltoan@dwt.com
*Attorney for Defendant Warby Parker, Inc.*

11

1